# *NATIONAL REGISTERED AGENTS, INC.*

## *SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM*

To: **ISABEL RUBIO-CARVAJAL**
**VALUED SERVICES, LLC**
**600 WESTPARK DRIVE**
**PEACHTREE CITY, GA 30269-**

SOP Transmittal # **AR11541**

(800) 767-1553 – Telephone
(609) 716-0820 – Fax

Defendant: **VS FINANCIAL OF ARKANSAS, LLC**
(Entity Served)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc or its Affiliate in the State of **ARKANSAS** on this **5** day of **May** , **2008** The following is a summary of the document(s) received:

1   **Title of Action:** Ruth Esther Et Al vs Compucredit Corporation Et Al

2   **Document(s) served:**

|   |   |   |
|---|---|---|
| **x** Summons | __ Subpoena | __ Injunction |
| **x** Complaint | __ Third Party Complaint | __ Notice of |
| __ Petition | __ Demand for Jury Trial | __ Mechanics Lien |
| __ Garnishment | __ Default Judgement | **x** Other: Request for Admissions To VS Financial,LLC |

3   **Court of Jurisdiction/** Circuit Court of Ouachita County, Arkansas, Second Division
**Case & Docket Number:** CV-2008-103-2

4   **Amount Claimed, if any:** None Stated

5   **Method of Service** (select one):
__ Personally served by:   __ Process Server   __ Deputy Sheriff   __ U S Marshall
**x** Delivered Via:   **x** Certified Mail   __ Regular Mail   __ Facsimile
(Envelope enclosed)   (Envelope enclosed)

__ Other (Explain):

6   **Date and Time of Service:** 5/5/2008 4:33:47 PM CST (GMT -6)

7   **Appearance/Answer Date:** 20 Days

8   **Plaintiff's Attorney:** Todd Turner
(Name, Address & Telephone Number)   Arnold, Batson, Turner & Turner, PA
501 Crittenden St
Arkadelphia AR 71923
(870) 246-9844

9   **Federal Express Airbill # 791059970670**

10   **Call Made to:** VM - ISABEL RUBIO-CARVAJAL

11   **Special Comments:**

**NATIONAL REGISTERED AGENTS, INC.**       **Copies To:**

Transmitted by: John Brandt

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for informational purposes only and should not be considered a legal opinion  It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action

ORIGINAL

**EXHIBIT**
tabbies
*B*

# *NATIONAL REGISTERED AGENTS, INC.*

## *SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM*

To: ISABEL RUBIO-CARVAJAL
VALUED SERVICES, LLC
600 WESTPARK DRIVE
PEACHTREE CITY, GA 30269-

SOP Transmittal # **AR11541**

(800) 767-1553 - Telephone
(609) 716-0820 - Fax

Defendant: VS FINANCIAL OF ARKANSAS, LLC
(Entity Served)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc or its Affiliate in the State of ARKANSAS on this 5 day of May , 2008 The following is a summary of the document(s) received:

1   **Title of Action:** Ruth Esther Et Al vs Compucredit Corporation Et Al

2   **Document(s) served:**

| | | |
|---|---|---|
| **x** Summons | __ Subpoena | __ Injunction |
| **x** Complaint | __ Third Party Complaint | __ Notice of |
| __ Petition | __ Demand for Jury Trial | __ Mechanics Lien |
| __ Garnishment | __ Default Judgement | **x** Other: Request for Admissions To VS Financial,LLC |

3   **Court of Jurisdiction/** Circuit Court of Ouachita County, Arkansas, Second Division
**Case & Docket Number:** CV-2008-103-2

4   **Amount Claimed, if any:** None Stated

5   **Method of Service** (select one):
__ Personally served by:   __ Process Server       __ Deputy Sheriff       __ U S Marshall
**x** Delivered Via:       **x** Certified Mail     __ Regular Mail         __ Facsimile
                        (Envelope enclosed)      (Envelope enclosed)
__ Other (Explain):

6   **Date and Time of Service:** 5/5/2008 4:33:47 PM CST (GMT -6)

7   **Appearance/Answer Date:** 20 Days

8   **Plaintiff's Attorney:**        Todd Turner
    (Name Address & Telephone Number)  Arnold, Batson, Turner & Turner, PA
                                    501 Crittenden St
                                    Arkadelphia AR 71923
                                    (870) 246-9844

9   **Federal Express Airbill #** 791059970670

10  **Call Made to:** VM - ISABEL RUBIO-CARVAJAL

11  **Special Comments:**

**NATIONAL REGISTERED AGENTS, INC.**          **Copies To:**

Transmitted by: John Brandt

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for informational purposes only and should not be considered a legal opinion It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action

ACKNOWLEDGEMENT COPY - INITIAL AND RETURN TO NRAI

State of Arkansas
Ouachita County Circuit Court
Office of the Circuit Clerk
Ouachita County Courthouse
Camden, Arkansas

CASE NO. CV-2008-103-2

Court Division:   CIVIL

## SUMMONS
### (Notice of Lawsuit)

**PLAINTIFF(S):**

**DEFENDANT(S):**

RUTH EASTER, PATRICIA MAYS and
GLYNDOLYN EDERINGTON, individually
snd o/b/o a class of similarly situated persons

COMPUCREDIT CORPORATION and
VS FINANCIAL, LLC d/b/a FIRST AMERICAN
CASH ADVANCE

**PLAINTIFF'S ATTORNEY:**

**DEFENDANT'S ADDRESS:**

Todd Turner
**ARNOLD, BATSON, TURNER & TURNER, PA**
501 CRITTENDEN STREET
P.O. BOX 480
ARKADELPHIA, AR 71923

National Registered Agents, Inc.
Registered Agent for Service of Process for
**VS Financial of Arkansas, LLC**
**d/b/a First American Cash Advance**
The Tower Building
323 Center Street, Suite 1202
Little Rock, AR 72201

**TO THE ABOVE-NAMED DEFENDANT(S):**
1  You have been sued by the above-named Plaintiff(s).
2. You are directed to file a written response or other appropriate response to the attached complaint in the Ouachita County Circuit Clerk's office within THIRTY (30) days (if you are **not** a resident of the State of Arkansas) and TWENTY (20) days (if you are a resident of the State of Arkansas, from the date of which you are served with this summons.
3. A copy of your written response must be delivered or mailed to the Plaintiff or his attorney and proof of such service must be filed in the Circuit Clerk's office with your answer.
4. Unless you file a written response to this complaint within the time set forth above, judgment by default will be entered against you, together with Court costs of this action.
5  You may seek the advice of an attorney on any matter connected with this suit or your answer. Such attorney should be consulted immediately so that a response may be filed within the time limit stated.

WITNESS my hand and the seal of said Court this day ___April 21, 2008___

Ouachita County Circuit Clerk

By: _Betty Lemmons_ DEPUTY CLERK

**ADDITIONAL NOTICES:**
Complaint – Class Action

STATE OF ARKANSAS, COUNTY OF _____

On this _____ day of _____, 200____, at ___:_____ o'clock _____M., I have duly served the within summons by delivering a copy thereof (or stating the substance thereof), together with a copy of the complaint, to _____ such person being:
_____
CHECK APPLICABLE SQUARE:
_____ the person named therein as defendant.
_____ a member of the defendant's family above 15 years of age at defendant's usual place of abode, namely
_____ the duly designated agent for service of process for the defendant, namely _____

OTHER:

_____, SHERIFF
BY: _____   Deputy Sheriff

IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
_Second_ DIVISION

COPY

RUTH EASTER, PATRICIA MAYS
and GLYNDOLYN EDERINGTON,                                     **PLAINTIFFS**
*individually and o/b/o a class of similarly situated persons*

VS.

CASE NO. CV-2008-103-2

COMPUCREDIT CORPORATION; and
VS FINANCIAL, LLC D/B/A FIRST
AMERICAN CASH ADVANCE

                                                             **DEFENDANTS**

## CLASS ACTION COMPLAINT

Comes on now the Plaintiffs, individually and on behalf of a class of similarly situated persons, and for their Class Action Complaint hereby state as follows:

1.     The Plaintiffs are adult residents of Arkansas. The Plaintiffs seek relief, individually, and on behalf of a class of similarly situated persons, for damages pursuant to Article 19, Section 13, of the Arkansas Constitution and Arkansas Code Annotated § 4-88-101, *et seq.* Jurisdiction and venue are proper in this Court.

2.     The Defendant, VS Financial of Arkansas, LLC, d/b/a First American Cash Advance, is a payday lender which maintains approximately twenty-seven branch locations in the State of Arkansas. Upon information and belief, VS Financial is licensed with the Arkansas State Board of Collection Agencies. VS Financial purports to engage in transactions pursuant to the Arkansas Check Cashers Act.

3.     Compucredit Corporation (hereinafter "Compucredit") is a foreign corporation which maintains an office at 245 Perimeter Center Parkway, Suite 600, Atlanta, Georgia, 30346.

STATE OF ARKANSAS
County of Ouachita   SS
FILED ON THIS 21 DAY OF April 20 08
at 10:50 o'clock A. M
Betty Lemons, Circuit Clerk
By: Betty Lemons
                                        DC

4      In 2004, a subsidiary of Compucredit purchased substantially all of the assets of a national payday lender operating under the name of First American Cash Advance and began what Compucredit refers to as its "Retail Micro-Loans segment."

5.      In Arkansas, Compucredit's Retail Micro-Loan segment is conducted through Compucredit's subsidiary, VS Financial of Arkansas, LLC. Compucredit refers to its Micro-Loan Segment operations in the State of Arkansas as its "direct lending model."

6.      VS Financial of Arkansas, LLC is a Foreign Limited Liability Company with its principal place of business in a State other than Arkansas. VS Financial of Arkansas, LLC's Registered Agent is National Registered Agents, Inc., The Tower Building, 323 Center Street, STE 1202, Little Rock, AR 72201.

7.      VS Financial of Arkansas, LLC does business in Arkansas under the name "First American Cash Advance." As such, VS Financial of Arkansas, LLC shall hereinafter be referred to as "FACA."

8.      Upon information and belief, FACA operates approximately twenty-seven First American Cash Advance branch offices in Arkansas.

9.      FACA makes payday loans to customers at its Arkansas branch locations.

10.      In a typical transaction, customers present FACA with a personal check. FACA agrees to hold the check until some point in the future, usually based upon the date of the customer's next payday. In exchange for the check, the customer is presented with a money order from FACA. The customer must then cash the money order at the same FACA location for an additional "fee."

11.      In the above-described transactions, the customers are charged a 10% per annum "finance charge" in connection with the issuance of the Monday Order. However, the customers

are also charged a 10% "Check Cashing" fee. This "fee" is 10% of the face value of the money order. Because this "fee" constitutes interest under Arkansas law, it must be added to the "finance charge" in order to calculate the total interest charged to the customer in connection with these transactions. When this check cashing "fee" is added to the finance charge, it results in an annual percentage rate well in excess of 100% per annum.

12.    The net effect of these transactions is that the customer provides a check which represents a promise of future payment to FACA in exchange for a lesser amount of cash. The fees paid by the customers in connection with these transactions constitute interest under Arkansas law and the amount of cash that the customer leaves the store with represents the principle amount of the loan.

13.    Since December 11, 2007, the maximum legal rate of interest that can be charged in Arkansas has been 9.75% or less. As such, even the 10% charge currently on the face of the documents being used by the Defendants is illegal in the State of Arkansas. Therefore, in the alternative, even if this Court determines that the additional fees charged by Defendant do not constitute interest, each class member charged in excess of 9.75% since December 11, 2007, is entitled to damages in the amount of twice the amount of fees paid plus a declaration that the entire transaction is void.

14.    In addition, the Defendants miscalculate their own finance charge because they base the calculation on the principle amount of the loan plus the other fees they impose in the lending transactions. Therefore, based on good faith knowledge and belief, all of the Defendants' transactions for the class period described herein were usurious under Arkansas law.

15.    The fees charged by FACA, which constitute interest, in connection with these credit transactions, constitute usury.

16      Plaintiff Ruth Easter is an adult resident of Camden, Ouachita County, Arkansas
Ms. Easter draws Social Security disability which has been her sole source of income for several
years. Ms. Easter entered into a transaction with the Defendants around September, 2006.
Under the terms of the Defendants' loan, Ms. Easter was obligated to pay $840.66 which was
due in one month in exchange for cash in the amount of $750.00. Later, Ms. Easter increased
the amount of the loan and began paying approximately $1,008.00 for a $900 loan each month.
Ms. Easter paid the Defendants continuously from September, 2006 until she eventually stopped
payment on her check or ACH debt authorization around March 3, 2008. The fees charged by
the Defendants in each of these transactions exceeded 100% per annum. Copies of some of the
documents related to the Plaintiffs' transactions are attached as **Exhibit A**.

17.      Plaintiff, Patricia Mays is an adult resident of Camden, Ouachita County,
Arkansas. Ms. Mays is a single person who has drawn SSI for over ten years. Ms. Mays has
been receiving loans from the Defendants for approximately four years. The net effect of the
transactions between Ms. Mays and the Defendants is that the Plaintiff agrees to pay $392.20,
payable in one month, in exchange for $350.00 cash. The fees exacted by the Defendants in
these transactions represent interest in excess of 100% per annum. Copies of some of the
documents related to the Plaintiffs' transactions are attached as **Exhibit B**.

18.      Plaintiff, Glyndolyn Ederington is an adult resident of Camden, Ouachita County,
Arkansas. Ms. Ederington began doing business with FACA in 2006 and has been going and
making regular and continuous payments to FACA for two (2) years. Ms. Ederington entered
into a transaction with FACA in 2008. The net effect of the transactions between Ms.
Ederington and FACA was that Ms Ederington agreed to pay approximately $672.14, due each
month, in exchange for cash in the amount of $600.00  The fees charged by FACA during this

transaction were approximately $72.14. Ms. Ederington was required to make payment each month. This represents interest in excess of 100% APR. During the course of her regular monthly visits to First America Cash Advance, Ms. Ederington would pay the Defendants approximately $672.14 in cash and would leave with $600.00 in cash and the obligation to pay the entire principle and interest due (of approximately $672.14) at the end of the following month. Ms. Ederington was not required to provide the Defendants with a new personal check for each transaction. Copies of some of the documents related to the Plaintiffs' transactions are attached as **Exhibit C.**

19.    Ms. Ederington eventually cancelled her transaction with FACA. After she cancelled the transaction, she received a call from Jackie Ross, an employee at FACA's branch office in Camden, Arkansas. Ross told Ms. Ederington that she could pay the $72.00 "interest" and FACA would hold her check for an additional period of time. Ms. Ross also told Ms. Ederington that FACA would send her check to the Prosecuting Attorney if they did not receive proper payment.

20.    Ross also advised Ms. Ederington that if the entire amount of the transaction of $672.00 was due and payable by April 3, 2008. Ross told Ms. Ederington that if the full payment was not made by April 3, 2008, that Ms. Ederington would owe $698.00.

21.    On or around April 9, 2008, the Defendants attempted to withdraw $697.14 from Ms. Ederington's personal bank account through an electronic funds transaction. **Exhibit D.**

22.    FACA charges fees which are not disclosed on the attached documents. These fees are allegedly for cashing a money order.

23.    All of the fees charged by FACA over and above the principle amount of the cash advance constitute interest under Arkansas law.

24.    Under the Arkansas Check Casher's Act, a check casher must provide cash in exchange for cashing a check or providing a deferred presentment agreement to a customer. FACA does not provide cash to its customer but instead provides customers with a money order. This money order can only be cashed upon the payment of an additional fee to FACA.

25.    The Defendants accept checks from their customers and use the checks in order to secure ACH debt authorization for the customer's checking account.

26.    After the initial transaction, the Defendants do not regularly require the customer to produce a new personal check. Instead, the Defendants use the ACH debt authorization in order to debit their customer's account if the customer does not make full payment at the end of the long period.

27.    The ACH authorizations employed by the Defendants have the same result as the negotiation of a personal check on their customers' bank account.

## USURY

28.    The transactions described in this Complaint constitute credit transactions.

29.    The transactions between FACA and its customers are loans.

30.    The fees charged by FACA are interest.

31.    Article 19, § 13 of the Arkansas Constitution limits the amount of interest on consumer transactions in Arkansas.

32.    The interest charged by FACA exceeds the allowable interest under the Arkansas Constitution.

33.    The fees charged by FACA are usurious.

34.    Under Article 19, § 13, the transactions between FACA and its customers are void as to principal and interest.

35.    Under Article 19, § 13, the Plaintiffs, individually, and the members of their class, are entitled to damages in the amount of equal to twice the amount of interest paid to FACA.

36    The Plaintiffs and members of their class are entitled to judgment for her reasonable attorney's fees and costs.

## DECEPTIVE TRADE PRACTICES ACT

37.    The Defendants are persons governed by the Arkansas Deceptive Trade Practices Act (Ark. Code Ann. § 4-88-101, *et seq.* "DTPA").

38.    Under the DTPA, persons who supervise, control and derive financial gain from any personal entity which violates the Act are also liable for damages.

39.    Compucredit is an entity which derives financial gain and which controls and supervises the actions of FACA.

40.    FACA's conduct as described herein is unfair and deceptive.

41.    All of the fees which FACA charges in the payday loan transactions described in this Complaint are interest under Arkansas law. This interest exceeds 100%.

42.    The act of charging interest rates in excess of 100% is unconscionable as a matter of law in Arkansas.

43    The Defendants purport to comply with the Arkansas Check Cashers Act. However, the Defendants' conduct violates this Act by, *inter alia*, failing to provide cash in exchange for cashing a personal check.

44    The Plaintiffs and members of their class are entitled to damages from the Defendants for violation of the DTPA.

45.    The Plaintiffs and members of their class are entitled to judgment against the Defendants for their reasonable attorney's fees and costs incurred herein.

## CLASS ACTION ALLEGATIONS

46.    Upon information and belief, the class of persons on whose behalf Plaintiffs have brought this Class Action is so numerous that joinder of all members is impracticable.

47.    The proposed class is defined as persons who have taken out cash loans from the Defendants at their offices in the State of Arkansas at interest rates exceeding the maximum lawful rate set forth in Article 19, § 13 of the Arkansas Constitution. The proposed class includes persons who have been charged or paid usurious interest rates to the Defendants for transactions at its Arkansas locations at any time from five years prior to the filing of this Complaint up to and including an entry of judgment in this case.

48.    There are questions of law or fact common to the members of the class and these common questions predominate over any questions affecting only the individual members. The common questions include, but are not limited to, (a) whether Defendants' transactions with its customers as described herein constitute contracts within the meaning of Article 19, § 13 of the Arkansas Constitution; (b) whether Defendants' contracts with class members bear interest at a rate exceeding the maximum lawful rate set forth in Article 19, § 13 of the Arkansas Constitution; and (c) whether the Defendants' transactions violate the DTPA.

49.    The Plaintiffs' claims are typical of the claims of the other members of the class. The Plaintiffs are interested in the outcome of this lawsuit and understands the importance of adequately representing every member of the class. Therefore, Plaintiffs will be adequate representatives of the class.

50.    Plaintiffs assert that they will fairly and adequately protect the interests of the class and any subclasses to which these proceedings are applicable.

51    A class action is superior to other available methods for the fair and efficient

adjudication of this matter and a class should be certified under Rule 23 of the Arkansas Rules of Civil Procedure.

52.    Numerous cases with facts identical to the facts in the instant case have been certified as class actions and the class certifications have been affirmed by the Arkansas Supreme Court.

53.    Plaintiffs' counsel are adequate to represent the putative class in this case.

## JURY DEMAND

54.    The Plaintiffs reserve the right to amend this Complaint as allowed by the Arkansas Rules of Civil Procedure and hereby demand a trial by jury.

WHEREFORE, the Plaintiffs, individually and on behalf of their putative class, pray for the relief set forth herein, request that this case be certified as a class action and that they be appointed as class representatives, that their counsel be appointed as class counsel, that they and their class be awarded judgment equal to twice the amount of fees paid to the Defendants during the class period, that they be awarded judgment against the Defendants for their damages under the DTPA and for judgment for their attorney's fees and costs incurred herein, that the transactions between FACA and the Plaintiffs and their putative class be declared void pursuant to Arkansas Constitution, and for any and all other just and proper relief to which they may be entitled.

Respectfully submitted,

**TODD TURNER**
**DAN TURNER**
Arnold, Batson, Turner & Turner, PA
501 Crittenden Street
Arkadelphia, AR 71923
(870) 246-9844

**CHRIS AVERITT**

Scholtens & Averitt, PLC
113 East Jackson Street
Jonesboro, AR 72403
(870) 972-6900

By:

## PROMISSORY NOTE AND FEDERAL TRUTH-IN-LENDING DISCLOSURES

| Loan #: 15131131<br><br>Date: 04/03/2008<br>Due Date: 05/02/2008 | Lender: VS Financial of Arkansas, LLC<br>CAMDEN<br>620 CASH RD SW<br>Camden, Arkansas 71701<br>Phone: (870)836-7058 | Borrower: RUTH V. EASTER<br>Address: 528 FRAZIER, NA<br>Camden, Arkansas 71701 |

In this Promissory Note ("Note") and Federal Truth-in-Lending Disclosures, you are the Borrower identified above. We are the Lender, VS Financial of Arkansas, LLC

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate.<br>10% | FINANCE CHARGE<br>The dollar amount the credit will cost you.<br>$7.90 | Amount Financed<br>The amount of credit provided to you or on your behalf.<br>$1000.00 | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled.<br>$1007.90 |
|---|---|---|---|

Your Payment Schedule will be one payment in the amount of $ 1007.90 due by noon on Friday, May, 2,2008.

Security: Your ACH authorization is security for this loan

Late Charge: A late charge equal to 10% of the full amount of the scheduled payment, up to a maximum of $25, will be accessed on any payment not made when due.

Prepayment: If you pay off early, you will not have to pay a penalty.

See your Promissory Note for any additional information about nonpayment, default and prepayment refunds.

Itemization of Amount Financed of $1000.00:

$1000.00 Amount given to you directly.

$0.00 Amount paid on your account.

### Promissory Note

Promise to Pay: You promise to pay us in a single payment the principal sum of $ 1000.00 plus interest at the rate of 10% per annum computed on the actual days elapsed using a 365-day year, on by noon ("Due Date"). You promise to make your payment at the office of VS Financial of Arkansas, LLC or at such other address as we direct you in writing

Security: Pursuant to Comment 2(a)(25) of the Federal Reserve Board Official Staff Commentary to Regulation Z §226.2, we have disclosed to you that our interest in the ACH Debit Authorization is a security interest for Truth-in-Lending purposes only, because federal and Arkansas law do not clearly address whether our interest in the ACH Debit Authorization is a "security interest."

ACH Authorization: As an alternative method of receiving payment of any amount that you may owe under this Note, you authorize us, at any time beginning the day following a payment Due Date on which you fail to make a scheduled payment, to initiate an Electronic Funds Transfer (EFT) to debit your bank account: Name of bank and state: Bancorp South ("Paying Bank"); Account type: Checking; Bank routing and transit number: 082900966; and Account Number: 7400102631 ("Your Bank Account"). You acknowledge that your EFT authorization will remain in full force and effect until the earlier of the following occurs: (1) you satisfy all of your payment obligations under this Note or (2) you provide your bank or Lender notice of your termination of such authorization in such time and manner as to afford your bank or Lender a reasonable opportunity to act on your instructions. You acknowledge that Lender did not condition the extension of credit to you on your authorizing Lender to electronically debit your bank account. If you terminate your EFT authorization, such termination will not constitute an event of default under this Note and will not adversely affect Lender's decision to extend credit to you in the future. Because any EFT authorization under this Note is a one-time-only EFT authorization, and not a recurring EFT authorization, Lender's authority to initiate EFT debit entries to your bank account ends when you pay the Total of Payments plus any default penalties - such as the dishonored item fee -- and late charge you may owe under this Note. Finally, you acknowledge that the origination of EFT entries to your bank account must comply with applicable provisions of U.S. law.

Prepayment: You may prepay in full at any time the amount due under this Note

Late and Return Item Charges: A Late Charge will be imposed as set forth in the Disclosures above. The Late Charge is in addition to the Finance Charge. If your ACH debit which you give to us as payment under this Agreement is returned for any reason, you will owe us a returned item fee of $25.00 or the maximum amount allowed by law, if less. While Lender will not charge more than one fee for the same dishonored ACH transfer, even if it is dishonored more than once, you understand and agree that the financial institution where you maintain the Account may impose charges due to each and every rejected or returned ACH transfer and that you will be solely liable for any such charges.

Collection Costs: To the extent permitted by law, and except to the extent such fees are limited by the Arbitration Provision, you agree to pay all reasonable attorney's fees and other expenses that we incur if you default on this Note, including but not limited to reasonable attorneys' fees.

Governing Law: This Agreement shall be governed by laws of the State of Arkansas, except that the Waiver of Jury Trial and Arbitration Provision shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 -16 ("FAA").

Credit Reporting: You agree that we may report your performance under this Note, including any default and any other relevant information, to credit reporting agencies. You authorize us to obtain credit reports on you at any time in connection with this Note

Assignment: We may assign our rights in this Note to any party, including a collection agency.

Waiver: You waive presentment, demand, protest and notice of dishonor. Lender may delay or forego enforcing any of its rights under this Note. Any waiver of our rights will not be effective unless it is in writing and signed by us.

Bankruptcy: You promise that you are not a debtor under any proceeding in bankruptcy, insolvency or reorganization, nor have you filed a petition for relief under the United States Bankruptcy Code

Page 1 of 3


EXHIBIT
A

### Waiver of Jury Trial and Arbitration Provision

Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator Pre-arbitration discovery may be limited Arbitration proceedings are private and less formal than court trials The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment A court rarely overturns an arbitrator's decision.

**THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**

1 For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter referred to as the "Arbitration Provision"), the words "you" and "your" refer to you, the Customer, and "we" and "us" refer to Lender and any parent, wholly or majority owned subsidiary, affiliate, predecessor, successor, assign, employee, officer, or director of the aforementioned, as well as third parties that have or may have had a relationship with you relating to any promissory note that you may enter into with Lender either now or in the future (collectively, the "Promissory Note"), any merchants or servicers and all of their respective parents, wholly or majority owned subsidiaries, affiliates, predecessors, successors, assigns, employees, officers, and directors. For purposes of this Arbitration Provision, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Note , the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Note (including the Arbitration Provision), the information you gave to us before signing the Note, including any past agreement or agreements between you and any of us, and all subsequent agreements, if any, between you and any of us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by any of us against you, including claims for money damages to collect any sum we claim you owe to any of us; (g) all claims asserted by you individually against any of us, and/or any of our respective employees, agents, directors, officers, shareholders, governors, managers, members, partners, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against any of us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by any of us or related third parties of any non-public personal information about you.

2 You acknowledge and agree that by entering into this Arbitration Provision:
(a) **YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST ANY OF US, AND/OR OUR RESPECTIVE RELATED THIRD PARTIES;**
(b) **YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST ANY OF US AND/OR OF OUR RESPECTIVE RELATED THIRD PARTIES; and**
(c) **YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST any of US AND/OR OUR RESPECTIVE RELATED THIRD PARTIES.**

3 Except as provided in Paragraph 6 below, all disputes including any Representative Claims against any of us and/or our respective related third parties shall be resolved by binding arbitration only on an individual basis with you THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION. YOUR DISPUTE MAY NOT BE CONSOLIDATED WITH THE DISPUTE OF OTHERS FOR ANY PURPOSE.

4 Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr org, or the National Arbitration Forum (1-800-474-2371) http://www.arb-forum.com. However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules The party receiving notice of arbitration will respond in writing by certified mail return receipt requested within twenty (20) days If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If related third parties or we demand arbitration, you must notify us within twenty (20) days in writing by certified mail return receipt requested of your decision to select an arbitration organization or your desire to select a local arbitrator If you fail to notify us, then we have the right to select an arbitration organization. The parties to such dispute will be governed by the rules and procedures of such arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Note or the Arbitration Provision, including the limitations on the arbitrator below You may obtain a copy of the rules and procedures by contacting the arbitration organization listed above.

5. Regardless of who demands arbitration, at your request we will advance your portion of the arbitration expenses, including the filing, administrative, hearing and arbitrator's fees ("Arbitration Fees") Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act ("FAA"), and applicable statutes of limitation, and shall honor claims of privilege recognized at law. The arbitration hearing will be conducted in the county of your residence, or within 30 miles from such county, or in the county in which the Note was signed by you, or in such other place as shall be ordered by the arbitrator The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment In conducting the arbitration proceeding, the arbitrator shall not apply any federal or state rules of civil procedure or evidence If the arbitrator renders a decision or an award in your favor resolving the dispute, then you will not be responsible for reimbursing us for your portion of the Arbitration Fees, and we will reimburse you for your Arbitration Fees you have previously paid If the arbitrator does not render a decision or an award in your favor resolving the dispute, then the arbitrator shall require you to reimburse us for the Arbitration Fees we have advanced, not to exceed the amount which would have been assessed as court costs if the dispute had been resolved by a state court with jurisdiction, less any Arbitration Fees you have previously paid At the timely request of any party, the arbitrator shall provide a written explanation for the award The arbitrator's award may be filed with any court having jurisdiction.

First American Cash Advance Nbr: 6067
620 CASH RD SW
Camden, AR 71701
(870)836-7058
License Nbr:

April 03, 2008
11:19 AM

## Advance

Agreement Nbr: 15131131
Check Nbr: ACH
Due Date: 05/02/08

### Summary

| | | |
|---|---|---|
| Amount | | $ 1000.00 |
| Fee | $ 7.90 | |
| Late Fee | $ 00 | |
| Returned Check Fee | $ 0.00 | |
| **Total Fees** | | $ 7.90 |
| Rebate | $ .00 | |
| Coupon(s) Redeemed | $ 00 | |
| Waived Fees | $ .00 | |
| Payments-to-Date | $ 00 | |
| **Total Reductions** | | $ .00 |
| **Amount Due** | | $ 1007.90 |

### This Transaction

| | | |
|---|---|---|
| **Transaction Date** | 04/03/2008 11:18 | |
| **Amount given to Customer** | | $ 1000.00 |
| In the form of | CC/MO | |
| Issued Check Nbr | 08873761847 | |

Signature: _____

RUTH EASTER
17398

Drawer Nbr: 606701    Employee Nbr: 297    Transaction Nbr: 39220189

First American Cash Advance Nbr: 6067
620 CASH RD SW
Camden, AR 71701
(870)836-7058
License Nbr:

April 03, 2008
11:19 AM

## Advance

Agreement Nbr: 15131131
Check Nbr: ACH
Due Date: 05/02/08

### Summary

| | | |
|---|---|---|
| Amount | | $ 1000.00 |
| Fee | $ 7.90 | |
| Late Fee | $ .00 | |
| Returned Check Fee | $ 0.00 | |
| Total Fees | | $ 7.90 |
| Rebate | $ .00 | |
| Coupon(s) Redeemed | $ 00 | |
| Waived Fees | $ .00 | |
| Payments-to-Date | $ .00 | |
| Total Reductions | | $ .00 |
| Amount Due | | $ 1007.90 |

### This Transaction

| | | |
|---|---|---|
| Transaction Date | 04/03/2008 11:18 | |
| Amount given to Customer | | $ 1000.00 |
| In the form of | CC/MO | |
| Issued Check Nbr | 08873761847 | |

Signature: _____

RUTH EASTER
17398

Drawer Nbr: 606701                Employee Nbr: 297                Transaction Nbr: 39220189

Valued Services of AR, LLC
## Affiliates and Subsidiaries

### BECAUSE YOUR TRUST IS SO IMPORTANT

Your trust is the cornerstone of our relationship. That is why we work so diligently to safeguard your privacy. The information that you provide us is kept in the strictest of confidence. We have no intentions of selling personal information about our customers to third-party businesses. We are proud to make that commitment to you, because your trust is the foundation of our business. The following privacy policy explains how we use and protect the information about our customers. We ask that you read it carefully.

### NOTICE OF YOUR FINANCIAL PRIVACY RIGHTS

We, our, and us, when used in this notice, mean Valued Services of AR, LLC
This is our privacy notice for our customers. When we use the words "you" and "your" we mean our consumer customers who have a continuing relationship by purchasing or holding financial products or services such as Cash Advance Services and Consumer Loans

We will tell you the sources of the information we collect about you. We will tell you what measures we take to secure that information. We first define some terms:
Nonpublic personal information means information about you that we collect in connection with providing a financial product or service to you. Nonpublic personal information does not include information that is available from public sources, such as telephone directories or government records
Hereafter, we will use the term "information" to mean nonpublic personal information as defined in this section.
An affiliate is a company we own or control, a company that owns or controls us, or a company that is owned or controlled by the same company that owns or controls us. Ownership does not mean complete ownership, but means owning enough to have control
A nonaffiliated third party is a person we do not employ or a company that is not an affiliate of ours. This is also known as nonaffiliated third party, or simply, an "other party."

### THE INFORMATION WE COLLECT

Information That We Collect. We collect information about you from the following sources::
* Information you give us on applications or other forms.
* Information about your transactions with us .
* Information about your transactions with affiliates.
* Information about your transactions with other parties .
* Information from a consumer reporting agency

### INFORMATION WE DISCLOSE ABOUT YOU

We reserve the right to disclose to affiliated companies and credit reporting agencies information received from you, including name and address, and information about your transactions with us, including the frequency of such transactions and payment history. The affiliates to whom we may disclose your nonpublic personal information are financial service providers. They include cash advance companies, consumer loan companies, credit card and tax preparation service companies.

### THE CONFIDENTIALITY, SECURITY, AND INTEGRITY OF YOUR INFORMATION

We restrict access to information about you to our employees and employees of our service providers who have a need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards to protect this information.

### INFORMATION ABOUT FORMER CUSTOMERS

We do not disclose information about former customers, except as permitted by law.
If you have any questions regarding this disclosure, please call the Customer Service number 1-888-479-2026 and ask to speak to our legal department.

Affiliates and Subsidiaries

## BECAUSE YOUR TRUST IS SO IMPORTANT

Your trust is the cornerstone of our relationship. That is why we work so diligently to safeguard your privacy. The information that you provide us is kept in the strictest of confidence. We have no intentions of selling personal information about our customers to third-party businesses. We are proud to make that commitment to you, because your trust is the foundation of our business. The following privacy policy explains how we use and protect the information about our customers. We ask that you read it carefully.

## NOTICE OF YOUR FINANCIAL PRIVACY RIGHTS

We, our, and us, when used in this notice, mean Valued Services of AR, LLC.
This is our privacy notice for our customers. When we use the words "you" and "your" we mean our consumer customers who have a continuing relationship by purchasing or holding financial products or services such as Cash Advance Services and Consumer Loans.

We will tell you the sources of the information we collect about you. We will tell you what measures we take to secure that information. We first define some terms:
Nonpublic personal information means information about you that we collect in connection with providing a financial product or service to you. Nonpublic personal information does not include information that is available from public sources, such as telephone directories or government records.
Hereafter, we will use the term "information" to mean nonpublic personal information as defined in this section.
An affiliate is a company we own or control, a company that owns or controls us, or a company that is owned or controlled by the same company that owns or controls us. Ownership does not mean complete ownership, but means owning enough to have control.
A nonaffiliated third party is a person we do not employ or a company that is not an affiliate of ours. This is also known as nonaffiliated third party, or simply, an "other party."

## THE INFORMATION WE COLLECT

Information That We Collect. We collect information about you from the following sources::
* Information you give us on applications or other forms.
* Information about your transactions with us .
* Information about your transactions with affiliates.
* Information about your transactions with other parties .
* Information from a consumer reporting agency

## INFORMATION WE DISCLOSE ABOUT YOU

We reserve the right to disclose to affiliated companies and credit reporting agencies information received from you, including name and address, and information about your transactions with us, including the frequency of such transactions and payment history. The affiliates to whom we may disclose your nonpublic personal information are financial service providers. They include cash advance companies, consumer loan companies, credit card and tax preparation service companies.

## THE CONFIDENTIALITY, SECURITY, AND INTEGRITY OF YOUR INFORMATION

We restrict access to information about you to our employees and employees of our service providers who have a need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards to protect this information.

## INFORMATION ABOUT FORMER CUSTOMERS

We do not disclose information about former customers, except as permitted by law.
If you have any questions regarding this disclosure, please call the Customer Service number 1-888-479-2026 and ask to speak to our legal department

## Affiliates and Subsidiaries

## BECAUSE YOUR TRUST IS SO IMPORTANT

Your trust is the cornerstone of our relationship. That is why we work so diligently to safeguard your privacy. The information that you provide us is kept in the strictest of confidence. We have no intentions of selling personal information about our customers to third-party businesses. We are proud to make that commitment to you, because your trust is the foundation of our business. The following privacy policy explains how we use and protect the information about our customers. We ask that you read it carefully.

## NOTICE OF YOUR FINANCIAL PRIVACY RIGHTS

We, our, and us, when used in this notice, mean Valued Services of AR, LLC
This is our privacy notice for our customers. When we use the words "you" and "your" we mean our consumer customers who have a continuing relationship by purchasing or holding financial products or services such as Cash Advance Services and Consumer Loans

We will tell you the sources of the information we collect about you. We will tell you what measures we take to secure that information. We first define some terms:
**Nonpublic personal information** means information about you that we collect in connection with providing a financial product or service to you. Nonpublic personal information does not include information that is available from public sources, such as telephone directories or government records
Hereafter, we will use the term "information" to mean nonpublic personal information as defined in this section.
An **affiliate** is a company we own or control, a company that owns or controls us, or a company that is owned or controlled by the same company that owns or controls us. Ownership does not mean complete ownership, but means owning enough to have control.
A **nonaffiliated third party** is a person we do not employ or a company that is not an affiliate of ours. This is also known as nonaffiliated third party, or simply, an "other party."

## THE INFORMATION WE COLLECT

**Information That We Collect.** We collect information about you from the following sources::
* Information you give us on applications or other forms.
* Information about your transactions with us.
* Information about your transactions with affiliates
* Information about your transactions with other parties.
* Information from a consumer reporting agency

## INFORMATION WE DISCLOSE ABOUT YOU

We reserve the right to disclose to affiliated companies and credit reporting agencies information received from you, including name and address, and information about your transactions with us, including the frequency of such transactions and payment history. The affiliates to whom we may disclose your nonpublic personal information are financial service providers. They include cash advance companies, consumer loan companies, credit card and tax preparation service companies.

## THE CONFIDENTIALITY, SECURITY, AND INTEGRITY OF YOUR INFORMATION

We restrict access to information about you to our employees and employees of our service providers who have a need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards to protect this information.

## INFORMATION ABOUT FORMER CUSTOMERS

We do not disclose information about former customers, except as permitted by law.
If you have any questions regarding this disclosure, please call the Customer Service number 1-888-479-2026 and ask to speak to our legal department.

6 All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration

7. Except as otherwise provided in this paragraph, this Note shall be governed by the laws of the State of Arkansas. However, since this Arbitration Provision is made pursuant to a transaction involving interstate commerce, it shall be governed by the FAA. If a final, non-appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA does not apply to this transaction, then our agreement to arbitrate shall be governed by the arbitration law of the State of Arkansas

8. This Arbitration Provision is binding upon and benefits you, your respective heirs, successors and assigns. The Arbitration Provision is binding upon and benefits each us and our respective successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Arbitration Provision is held invalid, the remainder shall remain in effect

Entire agreement. By signing this Agreement you acknowledge that it was filled in before you did so and you have received a completed copy of the Agreement. You agree that the information you provided to us prior to entering into this Agreement is accurate. This Agreement is the entire agreement between you and us relating to the subject matter of this Agreement. No modification of this Agreement shall be effective unless in writing and signed by you and us. If any provision of this Agreement is determined to be invalid or unenforceable, such provision shall be reformed if practicable so as to achieve its intended purpose(s) and shall not in any way affect the remaining provisions of this Agreement.

By signing below, you affirm that this Note has been completely filled in prior to you signing and that you received a completed copy of this Note. **You affirm that you have read, understand and agree to be bound to the terms of this Note and the Arbitration Agreement.**

VS Financial of Arkansas, LLC

| | | |
|---|---|---|
| Customer's Signature | 04/03/2008<br>Date: | Name/<br>Title: |

Any comments or questions may be directed to the Customer Comment Line toll-free number at: 1-888-479-2026

**Page 3 of 3**

## IMPORTANT INFORMATION REGARDING OPTIONAL CHECK CASHING SERVICE

Dear Valued Customer:

VS of Arkansas, LLC ("VSAR") offers an OPTIONAL check cashing service that is SEPARATE and APART from your loan. This service is in NO WAY related to the issuance of your loan. There is an ADDITIONAL CHARGE for this service that is in NO WAY related to the INTEREST charged on your loan. This means that you DO NOT have to use this service to apply for and receive a loan from VS Financial of Arkansas, LLC. You may cash or negotiate your money order elsewhere.

VSAR offers this check cashing service in an effort to provide you with comprehensive and convenient service. Your loan has been issued to you in the form of a Western Union Money Order. For a 10% fee, VSAR will cash your Western Union Money Order. This check cashing service allows you to apply for a loan, receive your loan in the form of a money order and cash your money order all at the same place of business.

I certify that I have read the above and understand that the check cashing service provided by VSAR is OPTIONAL, that such service is COMPLETELY UNRELATED to my loan, that I will pay a 10% fee that is SEPARATE and APART from the interest on my loan for such service and that applying for and receiving a loan from VS Financial of Arkansas is NOT contingent on my use of the OPTIONAL check cashing service offered by VSAR.

EASTERRUTHV
Printed Name

_Ruth L. Easter_
Signature

04/03/2008
Date

First American Cash Advance Nbr: 6067
620 CASH RD SW
Camden, AR 71701
(870)836-7058
License Nbr:

April 03, 2008
11:16 AM

## Buyback
Agreement Nbr: 15006287
Check Nbr: ACH
Due Date: 04/03/08

### History

| | | |
|---|---|---|
| | | $ 1000.00 |
| Amount | | |
| Fee | $ 8.50 | |
| Late Fee | $ .00 | |
| Returned Check Fee | $ 0 00 | |
| Total Fees | | $ 8.50 |
| Payments-to-Date | $ 0.00 | |
| Total Reductions | | $ .00 |
| Amount Due | | $ 1008.50 |

### This Transaction          04/03/2008 11:16

| | | |
|---|---|---|
| | | $ -1000.00 |
| Applied to Amount | | |
| Applied to Fee | $ -8.50 | |
| Applied to Late Fee | $ .00 | |
| Applied to Returned Check Fee | $ 0 00 | |
| Total Applied to Fees | | $ -8.50 |
| Total Applied to Account | | $ -1008.50 |
| Remaining Amount Due | | $ .00 |

### Payment Information

| | |
|---|---|
| Amount Paid by Customer | $ 1008.50 |
| Amount Received | $ 1020.00 |
| Change Given | $ 11.50 |

Signature: _____

RUTH EASTER
17398

Drawer Nbr: 606701

Employee Nbr: 297

Transaction Nbr: 39219978

First American Cash Advance Nbr: 6067
620 CASH RD SW
Camden, AR  71701
(870)836-7058
License Nbr:

April 03, 2008
11:16 AM

# Buyback

Agreement Nbr: 15006287
Check Nbr: ACH
Due Date: 04/03/08

### History

| | | |
|---|---|---|
| Amount | | $ 1000.00 |
| Fee | $ 8.50 | |
| Late Fee | $ 00 | |
| Returned Check Fee | $ 0.00 | |
| Total Fees | | $ 8.50 |
| Payments-to-Date | $ 0.00 | |
| Total Reductions | | $ .00 |
| Amount Due | | $ 1008.50 |

### This Transaction

04/03/2008 11:16

| | | |
|---|---|---|
| Applied to Amount | | $ -1000.00 |
| Applied to Fee | $ -8 50 | |
| Applied to Late Fee | $ .00 | |
| Applied to Returned Check Fee | $ 0.00 | |
| Total Applied to Fees | | $ -8.50 |
| Total Applied to Account | | $ -1008.50 |
| Remaining Amount Due | | $ .00 |

### Payment Information

| | |
|---|---|
| Amount Paid by Customer | $ 1008.50 |
| Amount Received | $ 1020.00 |
| Change Given | $ 11.50 |

Signature: _____
RUTH EASTER
17398

Employee Nbr: 297

Transaction Nbr: 39219978

Drawer Nbr: 606701

## PROMISSORY NOTE AND FEDERAL TRUTH-IN-LENDING DISCLOSURES

| | | |
|---|---|---|
| Loan #:15012947<br><br>Date:03/03/2008<br>Due Date:04/03/2008 | Lender:VS Financial of Arkansas, LLC<br>CAMDEN<br>620 CASH RD SW<br>Camden, Arkansas 71701<br>Phone: (870)836-7058 | Borrower :PATRICIA A MAYS<br>Address : 740 MCCULLOUGH ST, PO BOX 901<br>Camden, Arkansas 71701 |

In this Promissory Note ("Note") and Federal Truth-in-Lending Disclosures, you are the Borrower identified above. We are the Lender, VS Financial of Arkansas, LLC.

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| | | $388.89 | $392.20 |

Your Payment Schedule will be one payment in the amount of $ 392.20 due by noon on Thursday, April, 3,2008.

Security: Your ACH authorization is security for this loan

Late Charge: A late charge equal to 10% of the full amount of the scheduled payment, up to a maximum of $25, will be accessed on any payment not made when due.

Prepayment: If you pay off early, you will not have to pay a penalty.

See your Promissory Note for any additional information about nonpayment, default and prepayment refunds.

Itemization of Amount Financed of $388.89:

$388.89 Amount given to you directly.

$0.00 Amount paid on your account.

### Promissory Note

Promise to Pay:You promise to pay us in a single payment the principal sum of $ 388.89 plus interest at the rate of 10% per annum computed on the actual days elapsed using a 365-day year, on by noon ("Due Date"). You promise to make your payment at the office of VS Financial of Arkansas, LLC or at such other address as we direct you in writing.

Security:Pursuant to Comment 2(a)(25) of the Federal Reserve Board Official Staff Commentary to Regulation Z §226.2, we have disclosed to you that our interest in the ACH Debit Authorization is a security interest for Truth-in-Lending purposes only, because federal and Arkansas law do not clearly address whether our interest in the ACH Debit Authorization is a "security interest."

ACH Authorization: As an alternative method of receiving payment of any amount that you may owe under this Note, you authorize us, at any time beginning the day following a payment Due Date on which you fail to make a scheduled payment, to initiate an Electronic Funds Transfer (EFT) to debit your bank account: Name of bank and state: First Bank Of South Arkansas ("Paying Bank"); Account type: Checking; Bank routing and transit number: 082902320; and Account Number: 2085769 ("Your Bank Account") You acknowledge that your EFT authorization will remain in full force and effect until the earlier of the following occurs: (1) you satisfy all of your payment obligations under this Note or (2) you provide your bank or Lender notice of your termination of such authorization in such time and manner as to afford your bank or Lender a reasonable opportunity to act on your instructions. You acknowledge that Lender did not condition the extension of credit to you on your authorizing Lender to electronically debit your bank account. If you terminate your EFT authorization, such termination will not constitute an event of default under this Note and will not adversely affect Lender's decision to extend credit to you in the future. Because any EFT authorization under this Note is a one-time-only EFT authorization, and not a recurring EFT authorization, Lender's authority to initiate EFT debit entries to your bank account ends when you pay the Total of Payments plus any default penalties - such as the dishonored item fee - and late charge you may owe under this Note Finally, you acknowledge that the origination of EFT entries to your bank account must comply with applicable provisions of U.S law

Prepayment: You may prepay in full at any time the amount due under this Note

Late and Return Item Charges: A Late Charge will be imposed as set forth in the Disclosures above. The Late Charge is in addition to the Finance Charge. If your ACH debit which you give to us as payment under this Agreement is returned for any reason, you will owe us a returned item fee of $25 00 or the maximum amount allowed by law, if less. While Lender will not charge more than one fee for the same dishonored ACH transfer, even if it is dishonored more than once, you understand and agree that the financial institution where you maintain the Account may impose charges due to each and every rejected or returned ACH transfer and that you will be solely liable for any such charges.

Collection Costs: To the extent permitted by law, and except to the extent such fees are limited by the Arbitration Provision, you agree to pay all reasonable attorney's fees and other expenses that we incur if you default on this Note, including but not limited to reasonable attorneys' fees.

Governing Law: This Agreement shall be governed by laws of the State of Arkansas, except that the Waiver of Jury Trial and Arbitration Provision shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 -16 ("FAA").

Credit Reporting: You agree that we may report your performance under this Note, including any default and any other relevant information, to credit reporting agencies. You authorize us to obtain credit reports on you at any time in connection with this Note.

Assignment: We may assign our rights in this Note to any party, including a collection agency.

Waiver: You waive presentment, demand, protest and notice of dishonor Lender may delay or forego enforcing any of them. Any waiver of our rights will not be effective unless it is in writing and signed by us.

Bankruptcy: You promise that you are not a debtor under any proceeding in bankruptcy, insolvency or reorganization to file a petition for relief under the United States Bankruptcy Code

Page 1 of 3

EXHIBIT
B

## Waiver of Jury Trial and Arbitration Provision

Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision.

**THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**

1. For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter referred to as the "Arbitration Provision"), the words "you" and "your" refer to you, the Customer, and "we" and "us" refer to Lender and any parent, wholly or majority owned subsidiary, affiliate, predecessor, successor, assign, employee, officer, or director of the aforementioned, as well as third parties that have or may have had a relationship with you relating to any promissory note that you may enter into with Lender either now or in the future (collectively, the "Promissory Note"), any merchants or servicers and all of their respective parents, wholly or majority owned subsidiaries, affiliates, predecessors, successors, assigns, employees, officers, and directors. For purposes of this Arbitration Provision, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Note, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Note (including the Arbitration Provision), the information you gave to us before signing the Note, including any past agreement or agreements between you and any of us, and all subsequent agreements, if any, between you and any of us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by any of us against you, including claims for money damages to collect any sum we claim you owe to any of us; (g) all claims asserted by you individually against any of us, and/or any of our respective employees, agents, directors, officers, shareholders, governors, managers, members, partners, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against any of us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by any of us or related third parties of any non-public personal information about you.

2. You acknowledge and agree that by entering into this Arbitration Provision:
(a) **YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST ANY OF US, AND/OR OUR RESPECTIVE RELATED THIRD PARTIES;**
(b) **YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST ANY OF US AND/OR ANY OF OUR RESPECTIVE RELATED THIRD PARTIES; and**
(c) **YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, IN ANY OTHER REPRESENTATIVE CAPACITY, OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST** any of **US AND/OR OUR RESPECTIVE RELATED THIRD PARTIES.**

3. Except as provided in Paragraph 6 below, all disputes including any Representative Claims against any of us and/or our respective related third parties shall be resolved by binding arbitration only on an individual basis with you. THEREFORE, **THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION. YOUR DISPUTE MAY NOT BE CONSOLIDATED WITH THE DISPUTE OF OTHERS FOR ANY PURPOSE.**

4. Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr.org, or the National Arbitration Forum (1-800-474-2371) http://www.arb-forum.com. However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules. The party receiving notice of arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If related third parties or we demand arbitration, you must notify us within twenty (20) days in writing by certified mail return receipt requested of your decision to select an arbitration organization or your desire to select a local arbitrator. If you fail to notify us, then we have the right to select an arbitration organization. The parties to such dispute will be governed by the rules and procedures of such arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Note or the Arbitration Provision, including the limitations on the arbitrator below. You may obtain a copy of the rules and procedures by contacting the arbitration organization listed above.

5. Regardless of who demands arbitration, at your request we will advance your portion of the arbitration expenses, including the filing, administrative, hearing and arbitrator's fees ("Arbitration Fees"). Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act ("FAA"), and applicable statutes of limitation, and shall honor claims of privilege recognized at law. The arbitration hearing will be conducted in the county of your residence, or within 30 miles from such county, or in the county in which the Note was signed by you, or in such other place as shall be ordered by the arbitrator. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. In conducting the arbitration proceeding, the arbitrator shall not apply any federal or state rules of civil procedure or evidence. If the arbitrator renders a decision or an award in your favor resolving the dispute, then you will not be responsible for reimbursing us for your portion of the Arbitration Fees, and we will reimburse you for any Arbitration Fees you have previously paid. If the arbitrator does not render a decision or an award in your favor resolving the dispute, then the arbitrator shall require you to reimburse us for the Arbitration Fees we have advanced, not to exceed the amount which would have been assessed as court costs if the dispute had been resolved by a state court with jurisdiction, less any Arbitration Fees you have previously paid. At the timely request of any party, the arbitrator shall provide a written explanation for the award. The arbitrator's award may be filed with any court having jurisdiction.

6 All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration

7 Except as otherwise provided in this paragraph, this Note shall be governed by the laws of the State of Arkansas. However, since this Arbitration Provision is made pursuant to a transaction involving interstate commerce, it shall be governed by the FAA If a final, non-appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA does not apply to this transaction, then our agreement to arbitrate shall be governed by the arbitration law of the State of Arkansas.

8. This Arbitration Provision is binding upon and benefits you, your respective heirs, successors and assigns The Arbitration Provision is binding upon and benefits each us and our respective successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy The Arbitration Provision survives any termination, amendment, expiration or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing If any of this Arbitration Provision is held invalid, the remainder shall remain in effect

Entire agreement. By signing this Agreement you acknowledge that it was filled in before you did so and you have received a completed copy of the Agreement. You agree that the information you provided to us prior to entering into this Agreement is accurate This Agreement is the entire agreement between you and us relating to the subject matter of this Agreement No modification of this Agreement shall be effective unless in writing and signed by you and us. If any provision of this Agreement is determined to be invalid or unenforceable, such provision shall be reformed if practicable so as to achieve its intended purpose(s) and shall not in any way affect the remaining provisions of this Agreement.

By signing below, you affirm that this Note has been completely filled in prior to you signing and that you received a completed copy of this Note You affirm that you have read, understand and agree to be bound to the terms of this Note and the Arbitration Agreement.

VS Financial of Arkansas, LLC

Customer's Signature

Date: 03/03/2008

Name:
Title:

Any comments or questions may be directed to the Customer Comment Line toll-free number at: 1-888-479-2026

Page 3 of 3

## Affiliates and Subsidiaries

## BECAUSE YOUR TRUST IS SO IMPORTANT

Your trust is the cornerstone of our relationship. That is why we work so diligently to safeguard your privacy The information that you provide us is kept in the strictest of confidence. We have no intentions of selling personal information about our customers to third-party businesses. We are proud to make that commitment to you, because your trust is the foundation of our business The following privacy policy explains how we use and protect the information about our customers We ask that you read it carefully

## NOTICE OF YOUR FINANCIAL PRIVACY RIGHTS

We, our, and us, when used in this notice, mean Valued Services of AR, LLC.
This is our privacy notice for our customers. When we use the words "you" and "your" we mean our consumer customers who have a continuing relationship by purchasing or holding financial products or services such as Cash Advance Services and Consumer Loans

We will tell you the sources of the information we collect about you. We will tell you what measures we take to secure that information.
We first define some terms:
Nonpublic personal information means information about you that we collect in connection with providing a financial product or service to you Nonpublic personal information does not include information that is available from public sources, such as telephone directories or government records
Hereafter, we will use the term "information" to mean nonpublic personal information as defined in this section.
An affiliate is a company we own or control, a company that owns or controls us, or a company that is owned or controlled by the same company that owns or controls us. Ownership does not mean complete ownership, but means owning enough to have control.
A nonaffiliated third party is a person we do not employ or a company that is not an affiliate of ours. This is also known as nonaffiliated third party, or simply, an "other party."

## THE INFORMATION WE COLLECT

Information That We Collect.We collect information about you from the following sources::
*   Information you give us on applications or other forms.
*   Information about your transactions with us .
*   Information about your transactions with affiliates.
*   Information about your transactions with other parties .
*   Information from a consumer reporting agency

## INFORMATION WE DISCLOSE ABOUT YOU

We reserve the right to disclose to affiliated companies and credit reporting agencies information received from you, including name and address, and information about your transactions with us, including the frequency of such transactions and payment history. The affiliates to whom we may disclose your nonpublic personal information are financial service providers They include cash advance companies, consumer loan companies,credit card and tax preparation service companies.

## THE CONFIDENTIALITY, SECURITY, AND INTEGRITY OF YOUR INFORMATION

We restrict access to information about you to our employees and employees of our service providers who have a need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards to protect this information.

## INFORMATION ABOUT FORMER CUSTOMERS

We do not disclose information about former customers, except as permitted by law.
If you have any questions regarding this disclosure, please call the Customer Service number 1-888-479-2026 and ask to speak to our legal department

## Affiliates and Subsidiaries

### BECAUSE YOUR TRUST IS SO IMPORTANT

Your trust is the cornerstone of our relationship. That is why we work so diligently to safeguard your privacy. The information that you provide us is kept in the strictest of confidence. We have no intentions of selling personal information about our customers to third-party businesses. We are proud to make that commitment to you, because your trust is the foundation of our business. The following privacy policy explains how we use and protect the information about our customers. We ask that you read it carefully

### NOTICE OF YOUR FINANCIAL PRIVACY RIGHTS

We, our, and us, when used in this notice, mean Valued Services of AR, LLC. This is our privacy notice for our customers. When we use the words "you" and "your" we mean our consumer customers who have a continuing relationship by purchasing or holding financial products or services such as Cash Advance Services and Consumer Loans

We will tell you the sources of the information we collect about you. We will tell you what measures we take to secure that information. We first define some terms:

Nonpublic personal information means information about you that we collect in connection with providing a financial product or service to you. Nonpublic personal information does not include information that is available from public sources, such as telephone directories or government records.

Hereafter, we will use the term "information" to mean nonpublic personal information as defined in this section

An affiliate is a company we own or control, a company that owns or controls us, or a company that is owned or controlled by the same company that owns or controls us. Ownership does not mean complete ownership, but means owning enough to have control.

A nonaffiliated third party is a person we do not employ or a company that is not an affiliate of ours. This is also known as nonaffiliated third party, or simply, an "other party."

### THE INFORMATION WE COLLECT

Information That We Collect. We collect information about you from the following sources::
* Information you give us on applications or other forms.
* Information about your transactions with us .
* Information about your transactions with affiliates
* Information about your transactions with other parties .
* Information from a consumer reporting agency

### INFORMATION WE DISCLOSE ABOUT YOU

We reserve the right to disclose to affiliated companies and credit reporting agencies information received from you, including name and address, and information about your transactions with us, including the frequency of such transactions and payment history. The affiliates to whom we may disclose your nonpublic personal information are financial service providers. They include cash advance companies, consumer loan companies, credit card and tax preparation service companies.

### THE CONFIDENTIALITY, SECURITY, AND INTEGRITY OF YOUR INFORMATION

We restrict access to information about you to our employees and employees of our service providers who have a need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards to protect this information.

### INFORMATION ABOUT FORMER CUSTOMERS

We do not disclose information about former customers, except as permitted by law. If you have any questions regarding this disclosure, please call the Customer Service number 1-888-479-2026 and ask to speak to our legal department

## Affiliates and Subsidiaries

## BECAUSE YOUR TRUST IS SO IMPORTANT

Your trust is the cornerstone of our relationship. That is why we work so diligently to safeguard your privacy. The information that you provide us is kept in the strictest of confidence We have no intentions of selling personal information about our customers to third-party businesses. We are proud to make that commitment to you, because your trust is the foundation of our business The following privacy policy explains how we use and protect the information about our customers We ask that you read it carefully

## NOTICE OF YOUR FINANCIAL PRIVACY RIGHTS

We, our, and us, when used in this notice, mean Valued Services of AR, LLC.
This is our privacy notice for our customers. When we use the words "you" and "your" we mean our consumer customers who have a continuing relationship by purchasing or holding financial products or services such as Cash Advance Services and Consumer Loans

We will tell you the sources of the information we collect about you We will tell you what measures we take to secure that information.
We first define some terms:
**Nonpublic personal information** means information about you that we collect in connection with providing a financial product or service to you Nonpublic personal information does not include information that is available from public sources, such as telephone directories or government records
Hereafter, we will use the term "information" to mean nonpublic personal information as defined in this section
An **affiliate** is a company we own or control, a company that owns or controls us, or a company that is owned or controlled by the same company that owns or controls us. Ownership does not mean complete ownership, but means owning enough to have control.
A **nonaffiliated third party** is a person we do not employ or a company that is not an affiliate of ours This is also known as nonaffiliated third party, or simply, an "other party."

## THE INFORMATION WE COLLECT

**Information That We Collect.** We collect information about you from the following sources::
* Information you give us on applications or other forms.
* Information about your transactions with us .
* Information about your transactions with affiliates
* Information about your transactions with other parties -
* Information from a consumer reporting agency

## INFORMATION WE DISCLOSE ABOUT YOU

We reserve the right to disclose to affiliated companies and credit reporting agencies information received from you, including name and address, and information about your transactions with us, including the frequency of such transactions and payment history. The affiliates to whom we may disclose your nonpublic personal information are financial service providers. They include cash advance companies, consumer loan companies, credit card and tax preparation service companies.

## THE CONFIDENTIALITY, SECURITY, AND INTEGRITY OF YOUR INFORMATION

We restrict access to information about you to our employees and employees of our service providers who have a need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards to protect this information.

## INFORMATION ABOUT FORMER CUSTOMERS

We do not disclose information about former customers, except as permitted by law.
If you have any questions regarding this disclosure, please call the Customer Service number 1-888-479-2026 and ask to speak to our legal department

IMPORTANT INFORMATION REGARDING ~~~~~~~~~~

Dear Valued Customer:

VS of Arkansas, LLC ("VSAR") offers an OPTIONAL check cashing service that is SEPARATE and APART from your loan. This service is in NO WAY related to the issuance of your loan. There is an ADDITIONAL CHARGE for this service that is in NO WAY related to the INTEREST charged on your loan. This means that you DO NOT have to use this service to apply for and receive a loan from VS Financial of Arkansas, LLC. You may cash or negotiate your money order elsewhere.

VSAR offers this check cashing service in an effort to provide you with comprehensive and convenient service. Your loan has been issued to you in the form of a Western Union Money Order. For a 10% fee, VSAR will cash your Western Union Money Order. This check cashing service allows you to apply for a loan, receive your loan in the form of a money order and cash your money order all at the same place of business.

I certify that I have read the above and understand that the check cashing service provided by VSAR is OPTIONAL, that such service is COMPLETELY UNRELATED to my loan, that I will pay a 10% fee that is SEPARATE and APART from the interest on my loan for such service and that applying for and receiving a loan from VS Financial of Arkansas is NOT contingent on my use of the OPTIONAL check cashing service offered by VSAR.

MAYSPATRICIAA
Printed Name

*Signature*

03/03/2008
Date

First American Cash Advance Nbr: 6067
620 CASH RD SW
Camden, AR  71701
(870)836-7058
License Nbr:

March 03, 2008
03:12 PM

## Buyback
Agreement Nbr: 14875256
Check Nbr: ACH
Due Date: 03/03/08

### History
$ 444.44

| | |
|---|---|
| Amount | $ 3.78 |
| Fee | $ .00 |
| Late Fee | $ 0.00 |
| Returned Check Fee | |
| Total Fees | $ 3.78 |
| Payments-to-Date | $ 0.00 |
| Total Reductions | $ .00 |
| Amount Due | $ 448.22 |

### This Transaction
03/03/2008 15:12

| | |
|---|---|
| Applied to Amount | $ -444.44 |
| Applied to Fee | $ -3.78 |
| Applied to Late Fee | $ .00 |
| Applied to Returned Check Fee | $ 0.00 |
| Total Applied to Fees | $ -3.78 |
| Total Applied to Account | $ -448.22 |
| Remaining Amount Due | $ .00 |

### Payment Information

| | |
|---|---|
| Amount Paid by Customer | $ 448.22 |
| Amount Received | $ 448.22 |
| Change Given | $ .00 |

Signature: _____

PATRICIA MAYS
250528

Drawer Nbr: 606701

Employee Nbr: 297

Transaction Nbr: 38919539

First American Cash Advance Nbr: 6067
620 CASH RD SW
Camden, AR 71701
(870)836-7058
License Nbr:

March 03, 2008
03:12 PM

# Buyback
Agreement Nbr: 14875256
Check Nbr: ACH
Due Date: 03/03/08

## History

| | | |
|---|---|---|
| Amount | | $ 444.44 |
| Fee | $ 3.78 | |
| Late Fee | $ .00 | |
| Returned Check Fee | $ 0 00 | |
| Total Fees | | $ 3.78 |
| Payments-to-Date | $ 0.00 | |
| Total Reductions | | $ .00 |
| Amount Due | | $ 448.22 |

## This Transaction
**03/03/2008 15:12**

| | | |
|---|---|---|
| Applied to Amount | | $ -444.44 |
| Applied to Fee | $ -3.78 | |
| Applied to Late Fee | $ .00 | |
| Applied to Returned Check Fee | $ 0 00 | |
| Total Applied to Fees | | $ -3.78 |
| Total Applied to Account | | $ -448.22 |
| Remaining Amount Due | | $ .00 |

## Payment Information

| | |
|---|---|
| Amount Paid by Customer | $ 448.22 |
| Amount Received | $ 448.22 |
| Change Given | $ .00 |

Signature: _____

PATRICIA MAYS
250528

Employee Nbr: 297

Transaction Nbr: 38919539

Drawer Nbr: 606701

First American Cash Advance Nbr: 6067

620 CASH RD SW
Camden, AR 71701
(870)836-7058
License Nbr:

March 03, 2008
03:15 PM

## Advance

Agreement Nbr: 15012947
Check Nbr: ACH
Due Date: 04/03/08

### Summary

|  |  | $ 388.89 |
| --- | --- | --- |
| Amount |  |  |
| Fee | $ 3.31 |  |
| Late Fee | $ .00 |  |
| Returned Check Fee | $ 0.00 |  |
| Total Fees |  | $ 3.31 |
| Rebate | $ .00 |  |
| Coupon(s) Redeemed | $ .00 |  |
| Waived Fees | $ .00 |  |
| Payments-to-Date | $ .00 |  |
| Total Reductions |  | $ .00 |
| Amount Due |  | $ 392.20 |

### This Transaction

| Transaction Date | 03/03/2008 15:15 |  |
| --- | --- | --- |
| Amount given to Customer |  | $ 388.89 |
| In the form of | CC/MO |  |
| Issued Check Nbr | 08860847571 |  |

Signature: _____

PATRICIA MAYS
250528

Drawer Nbr: 606701

Employee Nbr: 297

Transaction Nbr: 38919705

First American Cash Advance Nbr: 6067
620 CASH RD SW
Camden, AR 71701
(870)836-7058
License Nbr:

March 03, 2008
03:15 PM

## **Advance**

Agreement Nbr: 15012947
Check Nbr: ACH
Due Date: 04/03/08

### **Summary**

| | | |
|---|---|---|
| Amount | | $ 388.89 |
| Fee | $ 3.31 | |
| Late Fee | $ .00 | |
| Returned Check Fee | $ 0.00 | |
| Total Fees | | $ 3.31 |
| Rebate | $ .00 | |
| Coupon(s) Redeemed | $ .00 | |
| Waived Fees | $ .00 | |
| Payments-to-Date | $ .00 | |
| Total Reductions | | $ .00 |
| Amount Due | | $ 392.20 |

### **This Transaction**

| | | |
|---|---|---|
| Transaction Date | 03/03/2008 15:15 | |
| Amount given to Customer | | $ 388.89 |
| In the form of | CC/MO | |
| Issued Check Nbr | 08860847571 | |

Signature: _____

PATRICIA MAYS
250528

Drawer Nbr: 606701

Employee Nbr: 297

Transaction Nbr: 38919705



**VS Financial of Arkansas, LLC**
**dba First American Cash Advance**
620 Cash Rd SW
Camden, AR 71701
Phone: 870-836-7058

Friday, April 11, 2008

Dear Ms. PATRICIA MAYS,

As you will recall, you signed a financial agreement with us on or about 03/03/2008 (the "Agreement") Our records indicate you failed to pay the amount owing on or before the Due Date Therefore, in accordance with the terms of the Agreement, we attempted to withdraw the amount due from your bank account by ACH transaction  The ACH transaction failed.

You have ignored our previous requests to pay the amount owing under the Agreement. You must immediately deliver cash, a money order or a certified check for the sum of all amounts due to us at the above address  If you do not satisfactorily resolve your obligation, your account may be turned over to a third-party collection agency or legal action may be filed against you. You may contact us at the number above to discuss the matter further.

In accordance with the fair and accurate credit transactions act of 2003, Regulation V, we are obligated to inform you that we may report to a credit bureau about a late payment, missed payment or other default on your account. This information may be reflected in your credit report.

## PLEASE CONDUCT YOURSELF ACCORDINGLY.

Sincerely,
JACKIE ROSS
Sales Manager

FACA FAH # 06067
620 Cash Road
Camden, AR 71701



Patricia Mayo
740 MCCullough
Po Box 901
Camden, AC 71701





## PROMISSORY NOTE AND FEDERAL TRUTH-IN-LENDING DISCLOSURES

| Loan #:15004680 | Lender:VS Financial of Arkansas, LLC | Borrower :GLYNDOLYN ANNETTEA EDERRINGTON |
|---|---|---|
| Date:03/03/2008<br>Due Date:04/03/2008 | CAMDEN<br>620 CASH RD SW<br>Camden, Arkansas 71701<br>Phone: (870)836-7058 | Address : 843 GLASSELL, NA<br>Camden, Arkansas 71701 |

In this Promissory Note ("Note") and Federal Truth-in-Lending Disclosures, you are the Borrower identified above  We are the Lender, VS Financial of Arkansas, LL C

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE The cost of your credit as a yearly rate. 10% | Amount Financed The amount of credit provided to you or on your behalf $666.67 | Total of Payments The amount you will have paid after you have made all payments as scheduled. $672.14 |
|---|---|---|

Your Payment Schedule will be one payment in the amount of $ 672.14 due by noon on Thursday, April, 3,2008
Security: Your ACH authorization is security for this loan.
Late Charge: A late charge equal to 10% of the full amount of the scheduled payment, up to a maximum of $25, will be accessed on any payment not made when due.
Prepayment: If you pay off early, you will not have to pay a penalty.
See your Promissory Note for any additional information about nonpayment, default and prepayment refunds.

Itemization of Amount Financed of $666.67:
$666.67 Amount given to you directly.
$0.00 Amount paid on your account

**EXHIBIT C**

### Promissory Note

**Promise to Pay:**You promise to pay us in a single payment the principal sum of $ 666.67 plus interest at the rate of 10% per annum computed on the actual days elapsed using a 365-day year, on by noon ("Due Date")  You promise to make your payment at the office of VS Financial of Arkansas, LLC or at such other address as we direct you in writing

**Security:**Pursuant to Comment 2(a)(25) of the Federal Reserve Board Official Staff Commentary to Regulation Z §226 2, we have disclosed to you that your interest in the ACH Debit Authorization is a security interest for Truth-in-Lending purposes only, because federal and Arkansas law do not clearly address whether our interest in the ACH Debit Authorization is a "security interest "

**ACH Authorization:** As an alternative method of receiving payment of any amount that you may owe under this Note, you authorize us, at any time beginning the day following a payment Due Date on which you fail to make a scheduled payment, to initiate an Electronic Funds Transfer (EFT) to debit your bank account: Name of bank and state: Farmers Bank And Trust Company ("Paying Bank"); Account type: Checking; Bank routing and transit number: 082901635; and Account Number: 2000094017 ("Your Bank Account").  You acknowledge that your EFT authorization will remain in full force and effect until the earlier of the following occurs: (1) you satisfy all of your payment obligations under this Note or (2) you provide your bank or Lender notice of your termination of such authorization in such time and manner as to afford your bank or Lender a reasonable opportunity to act on your instructions  You acknowledge that Lender did not condition the extension of credit to you on your authorizing Lender to electronically debit your bank account  If you terminate your EFT authorization, such termination will not constitute an event of default under this Note and will not adversely affect Lender's decision to extend credit to you in the future  Because any EFT authorization under this Note is a one-time-only EFT authorization, and not a recurring EFT authorization, Lender's authority to initiate EFT debit entries to your bank account ends when you pay the Total of Payments plus any default penalties - such as the dishonored item fee -- and late charge you may owe under this Note  Finally, you acknowledge that the origination of EFT entries to your bank account must comply with applicable provisions of U.S  law

**Prepayment:** You may prepay in full at any time the amount due under this Note

**Late and Return Item Charges:** A Late Charge will be imposed as set forth in the Disclosures above  The Late Charge is in addition to the Finance Charge  If your ACH debit which you give to us as payment under this Agreement is returned for any reason, you will owe us a returned item fee of $25.00 or the maximum amount allowed by law, if less  While Lender will not charge more than one fee for the same dishonored ACH transfer, even if it is dishonored more than once, you understand and agree that the financial institution where you maintain the Account may impose charges due to each and every rejected or returned ACH transfer and that you will be solely liable for any such charges.

**Collection Costs:** To the extent permitted by law, and except to the extent such fees are limited by the Arbitration Provision, you agree to pay all reasonable attorney's fees and other expenses that we incur if you default on this Note, including but not limited to reasonable attorneys' fees.

**Governing Law:** This Agreement shall be governed by laws of the State of Arkansas, except that the Waiver of Jury Trial and Arbitration Provision shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 -16 ("FAA")

**Credit Reporting:** You agree that we may report your performance under this Note, including any default and any other relevant information, to credit reporting agencies  You authorize us to obtain credit reports on you at any time in connection with this Note

**Assignment:** We may assign our rights in this Note to any party, including a collection agency

**Waiver:** You waive presentment, demand, protest and notice of dishonor  Lender may delay or forego enforcing any of its rights without losing them  Any waiver of our rights will not be effective unless it is in writing and signed by us

**Bankruptcy:** You promise that you are not a debtor under any proceeding in bankruptcy, insolvency or reorganization and have no current plan

## Waiver of Jury Trial and Arbitration Provision

Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision Each party to the dispute has an opportunity to present some evidence to the arbitrator Pre-arbitration discovery may be limited Arbitration proceedings are private and less formal than court trials The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision.

THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:

1 For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter referred to as the "Arbitration Provision"), the words "you" and "your" refer to you, the Customer, and "we" and "us" refer to Lender and any parent, wholly or majority owned subsidiary, affiliate, predecessor, successor, assign, employee, officer, or director of the aforementioned, as well as third parties that have or may have had a relationship with you relating to any promissory note that you may enter into with Lender either now or in the future (collectively, the "Promissory Note"), any merchants or servicers and all of their respective parents, wholly or majority owned subsidiaries, affiliates, predecessors, successors, assigns, employees, officers, and directors For purposes of this Arbitration Provision, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Note , the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Note (including the Arbitration Provision), the information you gave to us before signing the Note, including any past agreement or agreements between you and any of us, and all subsequent agreements, if any, between you and any of us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by any of us against you, including claims for money damages to collect any sum we claim you owe to any of us; (g) all claims asserted by you individually against any of us, and/or any of our respective employees, agents, directors, officers, shareholders, governors, managers, members, partners, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against any of us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by any of us or related third parties of any non-public personal information about you.

2 You acknowledge and agree that by entering into this Arbitration Provision:

(a) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST ANY OF US, AND/OR OUR RESPECTIVE RELATED THIRD PARTIES;

(b) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST ANY OF US AND/OR ANY OF OUR RESPECTIVE RELATED THIRD PARTIES; and

(c) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST ANY OF US AND/OR OUR RESPECTIVE RELATED THIRD PARTIES.

3 Except as provided in Paragraph 6 below, all disputes including any Representative Claims against any of us and/or our respective related third parties shall be resolved by binding arbitration only on an individual basis with you THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION YOUR DISPUTE MAY NOT BE CONSOLIDATED WITH THE DISPUTE OF OTHERS FOR ANY PURPOSE.

4 Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr org, or the National Arbitration Forum (1-800-474-2371) http://www arb-forum.com. However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules The party receiving notice of arbitration will respond in writing by certified mail return receipt requested within twenty (20) days If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If related third parties or we demand arbitration, you must notify us within twenty (20) days in writing by certified mail return receipt requested of your decision to select an arbitration organization or your desire to select a local arbitrator If you fail to notify us, then we have the right to select an arbitration organization The parties to such dispute will be governed by the rules and procedures of such arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Note or the Arbitration Provision, including the limitations on the arbitrator below. You may obtain a copy of the rules and procedures by contacting the arbitration organization listed above

5 Regardless of who demands arbitration, at your request we will advance your portion of the arbitration expenses, including the filing, administrative, hearing and arbitrator's fees ("Arbitration Fees") Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act ("FAA"), and applicable statutes of limitation, and shall honor claims of privilege recognized at law. The arbitration hearing will be conducted in the county of your residence, or within 30 miles from such county, or in the county in which the Note was signed by you, or in such other place as shall be ordered by the arbitrator The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment In conducting the arbitration proceeding, the arbitrator shall not apply any federal or state rules of civil procedure or evidence If the arbitrator renders a decision or an award in your favor resolving the dispute, then you will not be responsible for reimbursing us for your portion of the Arbitration Fees, and we will reimburse you for any Arbitration Fees you have previously paid If the arbitrator does not render a decision or an award in your favor resolving the dispute, then the arbitrator shall require you to reimburse us for the Arbitration Fees we have advanced, not to exceed the amount which would have been assessed as court costs if the dispute had been resolved by a state court with jurisdiction, less any Arbitration Fees you have previously paid At the timely request of any party, the arbitrator shall provide a written explanation for the award The arbitrator's award may be filed with any court having jurisdiction

6. All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration.

7. Except as otherwise provided in this paragraph, this Note shall be governed by the laws of the State of Arkansas. However, since this Arbitration Provision is made pursuant to a transaction involving interstate commerce, it shall be governed by the FAA. If a final, non-appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA does not apply to this transaction, then our agreement to arbitrate shall be governed by the arbitration law of the State of Arkansas

8. This Arbitration Provision is binding upon and benefits you, your respective heirs, successors and assigns. The Arbitration Provision is binding upon and benefits each us and our respective successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect. even if your obligations have been paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any of this Arbitration Provision is held invalid, the remainder shall remain in effect.

**Entire agreement.** By signing this Agreement you acknowledge that it was filled in before you did so and you have received a completed copy of the Agreement. You agree that the information you provided to us prior to entering into this Agreement is accurate. This Agreement is the entire agreement between you and us relating to the subject matter of this Agreement. No modification of this Agreement shall be effective unless in writing and signed by you and us. If any provision of this Agreement is determined to be invalid or unenforceable, such provision shall be reformed if practicable so as to achieve its intended purpose(s) and shall not in any way affect the remaining provisions of this Agreement.

By signing below, you affirm that this Note has been completely filled in prior to you signing and that you received a completed copy of this Note. You affirm that you have read, understand and agree to be bound to the terms of this Note and the Arbitration Agreement.

VS Financial of Arkansas, LLC

_____          03/03/2008          _____
Customer's Signature             Date:                Name
                                                      _____
                                                      Title:

Any comments or questions may be directed to the Customer Comment Line toll-free number at: 1-888-479-2026

**Page 3 of 3**



**VS Financial of Arkansas, LLC**
**dba First American Cash Advance**
620 Cash Rd SW
Camden, AR 71701
Phone: 870-836-7058

**Friday, April 11, 2008**

Dear Ms GLYNDOLYN EDERINGTON,
As you will recall, you signed a financial agreement with us on or about 03/03/2008 (the
"Agreement"). Our records indicate you failed to pay the amount owing on or before the Due
Date  Therefore, in accordance with the terms of the Agreement, we attempted to withdraw the
amount due from your bank account by ACH transaction  The ACH transaction failed

You have ignored our previous requests to pay the amount owing under the Agreement. You must
immediately deliver cash, a money order or a certified check for the sum of all amounts due to us at
the above address  If you do not satisfactorily resolve your obligation, your account may be turned
over to a third-party collection agency or legal action may be filed against you. You may contact us
at the number above to discuss the matter further

In accordance with the fair and accurate credit transactions act of 2003, Regulation V, we are
obligated to inform you that we may report to a credit bureau about a late payment, missed
payment or other default on your account  This information may be reflected in your credit report.

### PLEASE CONDUCT YOURSELF ACCORDINGLY.

Sincerely,
JACKIE ROSS
Sales Manager

FACA FAH # 06067
620 Cash Road
Camden, AR 71701

Glyndolyn Elinington
843 Glassell St.
Camden, AR. 71701



Farmers Bank & Trust
P. O. Box 250
Magnolia, AR  71754-0250

NOTICE OF NON-SUFFICIENT FUNDS
Account      2000094017
Date         4/09/08

Glyndolyn Annettea Ederington
or Constance Ewayne Strickland
or Perry Ederington
843 Glassell St
Camden AR  71701-4535

The check(s) shown below were presented against a balance insufficient
to pay the check(s).

The check(s) marked "PAID" have created an overdraft which needs your
immediate attention. The check(s) marked "RETURNED" have been returned
due to non-sufficient funds.

Your account has been charged $ 30.00 for these item(s).
Please deduct this amount from the balance in your checkbook register.

**Electronic Funds Transaction**

**Image Not Available**

CHECK# AMOUNT 697.14
WAS RETURNED.


EXHIBIT
D



## IN THE CIRCUIT COURT OF OUACHITA COUNTY, ARKANSAS
## _Second_ DIVISION

**RUTH EASTER, PATRICIA MAYS,
and GLYNDOLYN EDERINGTON,
individually and o/b/o a class of similarly situated persons**          **PLAINTIFFS**

VS.                                        CASE NO. CV-2008-103-2

**COMPUCREDIT CORPORATION; and
VS FINANCIAL, LLC D/B/A FIRST
AMERICAN CASH ADVANCE**                              **DEFENDANTS**

### REQUESTS FOR ADMISSIONS TO VS FINANCIAL, LLC

COMES NOW the Plaintiffs, individually, and on behalf of a class of similarly situated

persons, and state the following as their Requests for Admissions to the defendant, VS Financial,

LLC d/b/a First American Cash Advance. Pursuant to Rule 37(c) of the Arkansas Rules of Civil

Procedure, if VS Financial, LLC d/b/a First American Cash Advance fails to admit the truth of the

matters requested, and if Plaintiffs prove the truth of the matter, Plaintiffs shall apply for an order

requiring VS Financial, LLC d/b/a First American Cash Advance to pay expenses incurred in making

that proof, including reasonable attorney's fees.

REQUEST FOR ADMISSION NO. 1:    Admit that you made a loan to Ruth Easter within

the last twelve (12) months.

REQUEST FOR ADMISSION NO. 2:    Admit that Ruth Easter paid you interest in

connection with a loan within the last twelve (12) months.

REQUEST FOR ADMISSION NO. 3:    Admit that since December 11, 2007, the maximum

legal rate of interest that can be charged in Arkansas has been 9.75% or less.

REQUEST FOR ADMISSION NO. 3:    Admit that since January 9, 2003, the maximum

legal rate of interest that can be charged in Arkansas has been 11.25% or less.

STATE OF ARKANSAS
County of Ouachita      SS
FILED ON THIS _21_ DAY OF _April_ 20_08_
at _10:52_ o'clock _A_ .M.
Betty Lemons, Circuit Clerk
By: _Betty Lemons_

REQUEST FOR ADMISSION NO. 4:   Admit that you made over 50 loans at your branch in Camden, Arkansas in 2007.

REQUEST FOR ADMISSION NO. 5:   Admit that you made over 50 loans at your branch in Hot Springs, Arkansas in 2007.

REQUEST FOR ADMISSION NO. 6:   Admit that you have made over 100 loans to Arkansas residents since January 1, 2007.

REQUEST FOR ADMISSION NO. 7:   Admit that you have made over 100 loans to Arkansas residents since January 1, 2008.

REQUEST FOR ADMISSION NO.8:   Admit that the transactions between you and Ruth Easter are typical of the transactions between you and your other Arkansas customers.

REQUEST FOR ADMISSION NO. 9:   Admit that you made a loan to Patricia Mays within the last twelve (12) months.

REQUEST FOR ADMISSION NO. 10:   Admit that Patricia Mays paid you interest in connection with a loan within the last twelve (12) months.

REQUEST FOR ADMISSION NO.11:   Admit that the transactions between you and Patricia Mays are typical of the transactions between you and your other Arkansas customers.

REQUEST FOR ADMISSION NO. 12:   Admit that you made a loan to Glyndolyn Ederington within the last twelve (12) months.

REQUEST FOR ADMISSION NO. 13:   Admit that Glyndolyn Ederington paid you interest in connection with a loan within the last twelve (12) months.

2

REQUEST FOR ADMISSION NO.14:     Admit that the transactions between you and Glyndolyn Ederington are typical of the transactions between you and your other Arkansas customers.

REQUEST FOR ADMISSION NO. 15:  Admit that you have engaged in Transactions in Arkansas pursuant to the Arkansas Check Cashers Act with over 400 persons in the State of Arkansas in two years prior to the filing of the Complaint herein.

REQUEST FOR ADMISSION NO. 16:     Admit that you have engaged in Transactions in Arkansas pursuant to the Arkansas Check Cashers Act with over 800 persons in the State of Arkansas in two years prior to the filing of the Complaint herein.

REQUEST FOR ADMISSION NO. 17     Admit that VS Financial, LLC is a subsidiary of Compucredit Corporation.

REQUEST FOR ADMISSION NO. 18:     Admit that VS Financial, LLC operates under the Check-cashers Act, A.C.A. §23-52-101, *et seq*, and the fees it charged to the Plaintiffs were required to be in accordance with the Check-cashers Act.

Respectfully submitted,

Arnold, Batson, Turner & Turner, P.A.
501 Crittenden Street
Arkadelphia, AR 71923
(870) 246-9844

and

Scholtens & Averitt, PLC
113 East Jackson Avenue
Jonesboro, AR 72401
(870) 972-6900

By:

3