IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


RUTH EASTER, PATRICIA MAYS, and
GWENDOLYN EDERINGTON,
individually and on behalf of a class of
similarly situated persons                                                    PLAINTIFFS


VS.                                    CASE NO. 08-CV-1041


COMPUCREDIT CORPORATION,
VS FINANCIAL, LLC, and VS FINANCIAL
OF ARKANSAS, LLC d/b/a FIRST
AMERICAN CASH ADVANCE                                              DEFENDANTS

## MEMORANDUM OPINION

Before the Court are two motions: 1) the Renewed Motion to Compel Arbitration or, in the

Alternative, to Dismiss the First Amended Complaint filed by Defendants Compucredit Corporation and

VS Financial, LLC (Doc. 16); and 2) the Motion to Dismiss or Stay this Case and Compel Arbitration,

or in the Alternative, to Dismiss for Failure to State a Claim filed by Defendant VS of Arkansas, LLC.

(Doc. 19). Plaintiffs responded to both of these Motions with a single response. (Doc. 21). Defendants

replied. (Doc. 23). The Court finds this matter ripe for consideration.

## BACKGROUND

Defendant VS Financial of Arkansas, LLC ("VS Financial") is a payday lender that gives short

term loans. VS Financial is owned and operated by Defendant CompuCredit Corporation

("CompuCredit"). VS of Arkansas, LLC ("VS of Arkansas") is also a payday lender and owned and

operated by CompuCredit. VS Financial and VS of Arkansas conduct business within the same office

under the name First American Cash Advance ("FACA"). There are approximately 27 FACA locations

throughout the state of Arkansas. At these FACA locations VS Financial gives payday loans in the form of a money order, and VS of Arkansas cashes the money order for an additional check-cashing fee. The Plaintiffs were all customers of the FACA located in Camden, Arkansas. According to the Plaintiffs, they were made to believe that they must cash the money order at the same FACA location where they received their payday loans. The Plaintiffs were charged, on each transaction, a 10% per annum finance charge for the issuance of the money order and a 10% check cashing fee for cashing the money order.

The Plaintiffs each signed a document, in the course of doing business with the Defendants, titled "Promissory Note and Federal Truth-in-Lending Disclosures" ("Promissory Note"). The Promissory Note contains an arbitration provision that is titled "Waiver of Jury Trial and Arbitration Provision" ("Arbitration Provision"). In the Arbitration Provision, the word dispute is given its broadest meaning and includes "all claims asserted by any of us against [the customer]" and "all claims asserted by [the customer] individually against any of us...."[1]

The Arbitration Provision contains the following pertinent language:

"You acknowledge and agree that by entering into this Arbitration Provision:
(a) **YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST ANY OF US, AND/OR OUR RESPECTIVE RELATED THIRD PARTIES;**
(b) **YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST ANY OF US AND/OR ANY OF OUR RESPECTIVE RELATED THIRD PARTIES; and**
(c) **YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST any of US AND/OR OUR RESPECTIVE**

---

[1] In the Arbitration Provision, "us" is defined as "the Lender and any parent, wholly or majority owned subsidiary, affiliate, predecessor, successor, assign, employee, officer, or director of the aforementioned, as well as third parties that have or may have had a relationship with [the customer]...."

**RELATED THIRD PARTIES.**"

Promissory Note (emphasis in original). The Arbitration Provision also contains a clause stating:

> "all parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. Any disputes which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration."

The Promissory Note also has a choice-of-law provision providing that the Promissory Note is governed by the laws of Arkansas, except for the Arbitration Provision which is made pursuant to a transaction involving interstate commerce and thus shall be governed by the Federal Arbitration Act.

Plaintiffs claim that the fees charged by Defendants constitute interest and are usurious under Article 19 section 13 of the Arkansas Constitution. Plaintiffs also claim that Defendants' lending practices violate the Arkansas Deceptive Trade Practice Act. Lastly, Plaintiffs claim Defendants' actions constitute a civil conspiracy. Defendants responded by moving the Court to compel arbitration pursuant to the Arbitration Provision. Defendants assert that the Arbitration Provision is valid and that  this dispute is within the scope of the Arbitration Provision. In the alternative, the Defendants contend that Plaintiffs have failed to state a claim upon which relief can be granted and that their claims should be dismissed.

DISCUSSION

I. Validity of Arbitration Provision

Defendants first move the Court to stay these proceedings or dismiss them and compel arbitration. Plaintiffs claim that the Arbitration Provision is unenforceable because it lacks mutuality and is unconcionable.  The Federal Arbitration Act ("FAA") requires that a written agreement to arbitrate "in any...contract evidencing a transaction involving commerce...shall be valid, irrevocable, and

3

enforceable, save upon such grounds exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  There is a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable "upon such grounds as exist at law or in equity for the revocation of any contract." *Perry v. Thomas,* 482 U.S. 483, 489, 107 S.Ct. 2520 (1987) (citing 9 U.S.C. § 2). The contract here does evidence interstate commerce by its terms and the parties do not argue otherwise. Therefore, the only questions before the Court are:  1) whether a valid agreement to arbitrate exists; and if it does 2) whether the dispute is within the scope of the agreement. *Pro Tech Industries, Inc. v. URS Corp.,* 377 F.3d 868, 871 (8th Cir. 2004) (citing *Gannon v. Circuit City Stores, Inc.,* 262 F.3d 677, 680 (8th Cir. 2001)).

In order to determine whether the Arbitration Agreement is valid, the Court must look to general state contract law. *Perry,* 482 U.S. at 492 (holding that state law is applicable if it arose to govern contracts in general). The Court may apply a state's general contract defense laws but may not invalidate an arbitration agreement under a state law tailored specifically to arbitration provisions. *Doctor's Associates Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 1656 (1996).

Here, the Plaintiffs claim that the Arbitration Provision itself, but not the contract as a whole, is unenforceable because it lacks mutuality and is unconscionable. State law "contract defenses, such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements without contravening [9 U.S.C. § 2]." *Pleasants v. American Express Co.,* 541 F.3d 853, 857 (8th Cir. 2008) (quoting *Doctor's Associates,* 517 U.S. at 686-687). In Arkansas, the essential elements of a contract are: 1) competent parties; 2) subject matter; 3) legal consideration; 4) mutual agreement; and 5) mutual obligations. *Tyson Foods, Inc. v. Archer,* 147 S.W.3d 681, 684, 356 Ark. 136, 141-142 (2004). Therefore, Plaintiffs' lack of mutuality and unconscionability claims may be asserted in an attempt to

4

invalidate the Arbitration Provision, and the claims will be analyzed by the Court applying Arkansas general contract law.

a) Mutuality

The Arkansas Supreme Court has held that mutuality within an arbitration clause itself is required. *The Money Place, LLC v. Barnes,* 78 S.W.3d 714, 717, 349 Ark. 411, 414 (2002). In *Enderlin v. XM Satellite Radio Holdings, Inc.,* the plaintiff claimed that the arbitration clause in that contract lacked mutuality. No. 06-0032, 2008 WL 830262, at * 9 (E.D. Ark. Mar. 25, 2008). The *Enderlin* court framed the issue as whether the court may "require mutuality within an arbitration provision of the contract, but not as to each other provision separately." *Id.* at *9. The *Enderlin* court held that "Arkansas law requiring mutuality within the arbitration paragraph itself is preempted by the FAA because [Arkansas law] places the arbitration clause on unequal footing with other contract terms that do not each have to be mutual." *Id.* at *10. The Court agrees with the analysis in *Enderlin.* While the lack of mutuality claim is a general contract defense under Arkansas law, *Tyson,* 147 S.W.2d at 684, the requirement that the Arbitration Provision itself satisfy the requirement of mutuality is an Arkansas contract law specific to arbitration clauses and thus is not a state law applying to contracts in general. *See Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (holding that state law may be applied to arbitration agreements only to the extent that it applies to contracts in general).

The Supreme Court, in *Perry,* held that "a state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with [the] requirement[s] of [9 U.S.C. § 2]." 482 U.S. at 492. The *Perry* court goes on to explain that a court may not construe arbitration agreements in a manner differently from how it would construe a non-arbitration agreement

5

under state law. *Id.* Additionally, the FAA makes any state policy that places an arbitration clause on an unequal footing with the rest of the contract unlawful. *Allied-Bruce,* 513 U.S. at 281. A state may not "decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause." *Id.* The Court finds that requiring mutuality in the Arbitration Provision, but not in each other provision in the Promissory Note separately, places the Arbitration Provision on unequal footing with the rest of the contract. According to the Eighth Circuit, a doctrine requiring separate consideration for arbitration clauses "might risk running afoul of [the strong federal policy favoring arbitration]." *Barker v. Golf U.S.A., Inc.,* 154 F.3d 788, 792 (8th Cir. 1998) (quoting *Doctor's Associates,* 66 F.3d at 453). For these reasons, the Court finds that the Arkansas law requiring independent mutuality in an arbitration clause is preempted by the FAA. Therefore, the Court will not apply it to the Arbitration Provision.[2]

b) Unconscionability

Plaintiffs next claim that the Arbitration Provision is invalid because it is unconscionable. As stated above, an arbitration agreement is enforceable unless a recognized state law contract defense, such as unconscionablity exists to invalidate it. *Doctors's Associates,* 517 U.S. at 686-687. The Arkansas Supreme Court has provided the following test for whether a contract is unconscionable.

> "In assessing whether a particular contract or provision is unconscionable, the courts should review the totality of the circumstances surrounding the negotiation and execution of the contract. Two important considerations are whether there is a gross inequality of bargaining power between the parties to the contract and whether the aggrieved party was made aware of and comprehended the provision in question."

*State ex rel. Bryant v. R & A Inv. Co., Inc.,* 985 S.W.2d 299, 302, 336 Ark. 289, 296 (Ark. 1999) (citing

---

[2] Plaintiffs did not challenge the mutuality of the Promissory Note as a whole.

6

*Geldermann & Co., Inc. v. Lane Processing, Inc.,* 527 F.2d 571, 575 (8th Cir. 1975)). However, the Court is unable to find an application of the Arkansas unconscionability test in the context of an arbitration clause. The parties have cited to cases from other states, and the Court looks to this persuasive authority in its analysis.

Other states in the Eighth Circuit, when considering whether an arbitration clause is unconscionable, require both procedural unconscionability and substantive unconscionability. *Pleasants,* 541 F.3d at 857 (applying Missouri law that requires a contract to be both procedurally and substantively unconscionable, although not necessarily in equal amounts); *see also E.E.O.C. v. Woodmen of World Life Ins. Soc.,* 479 F.3d 561, 566 (8th Cir. 2007) (applying Nebraska law that requires a consideration of both procedural and substantive unconscionability).[3]  Procedural unconscionability deals with the formation of the contract, the manner in which it was entered into, the fine print of the contract, any misrepresentations, and any unequal bargaining power of the parties. *Pleasants,* 541 F.3d at 857-858. Substantive unconscionability, on the other hand, looks to the terms of the contract and whether or not they are harsh, one-sided, and oppressive. *Tillman v. Commercial Credit Loans, Inc.,* 655 S.E.2d 362, 370 (N.C. 2008).

Plaintiffs argue that the Arbitration Provision here is one-sided and oppressive. Specifically, Plaintiffs contend that the Arbitration Provision denies them access to the judicial arena while allowing Defendants to still have access to small claims court, and it prohibits Plaintiffs from joinder of claims

---

[3] In addition, a number of the state court cases cited to the Court by Plaintiffs also split the analysis into procedural and substantive unconscionability. *See Tillman v. Commercial Credit Loans, Inc.,* 655 S.E.2d 362 (N.C. 2008); *Vasquez-Lopez v. Beneficial Oregon, Inc.,* 152 P.3d 940, 948 (Or. App. 2007); and *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1170 (9th Cir. 2003) (applying California law).

and class action suits but does not prohibit Defendants from the same. These claims are both substantive unconscionability claims. Plaintiffs make no contention that the Arbitration Provision is procedurally unconscionable. Other courts have held that the party contesting the arbitration clause must prove both procedural and substantive unconscionability to render an arbitration clause unconscionable.[4] The Court is persuaded by this authority, along with the Arkansas test requiring a consideration of all of the circumstances, that both procedural and substantive unconscionability must be present to render an arbitration clause unconscionable. The Plaintiffs here made no assertion of procedural unconscionability and instead, they claim that the clauses prohibiting Plaintiffs from filing class action suits and denying Plaintiffs access to the judicial arena alone render the Arbitration Provision unconscionable.

The Plaintiffs first assert that the class action restriction contained in the Arbitration Provision renders it unconscionable. Plaintiffs rely on two cases that address class action limitations similar to the one in the Arbitration Provision.[5] The Court in its review of these cases finds that the courts in those decisions considered the class action limitations as one of many factors in the determination of unconscionability. In *Tillman*, the court considered "all of the facts and circumstances" of the case and determined that the prohibition on class actions is only one factor to be considered in determining whether the arbitration clause was unconscionable. 655 S.E.2d at 373. The *Tillman* court required both procedural and substantive unconscionability considering: 1) the fact that the lender rushed the borrower in the formation of the contract; 2) the unequal bargaining power of the parties; 3) the "prohibitively

---

[4] *Pleasants,* 541 F.3d at 857 (applying Missouri law); *see also Tillman,* 655 S.E.2d at 370; *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (applying California law); and *Kinkle v. Cingular Wireless, LLC,* 857 N.E.2d 250, 254 (Ill. 2006).

[5] *See Tillman v. Commercial Credit Loans, Inc.,* 655 S.E.2d 362 (N.C. 2008); *see also Vasquez-Lopez v. Beneficial Oregon, Inc.,* 152 P.3d 940, 948 (Or. App. 2007).

8

high" arbitration cost for the borrower; 4) the fact that the arbitration clause was "excessively one-sided and [lacked] mutuality;" and 5) the prohibition of class actions in the arbitration clause. *Id.* at 370-71. In *Vasquez-Lopez v. Beneficial Oregon, Inc.,* the court held that the arbitration agreement was unconscionable based not only on the ban of class action suits but also because of the procedurally unconscionable actions of the lender. 152 P.3d 940, 949 (Or. App. 2007). The borrowers in *Vasquez* were Spanish speakers who could not read English, and the arbitration agreement was in English. *Id.* In addition, the lender's representative, who obtained the borrowers signature, misrepresented information and concealed terms from the borrowers*. Id.* Plaintiffs have not offered the Court any facts regarding procedural unconscionability and for this reason the Court finds the above cases distinguishable from this situation.

The Court also finds persuasive the Illinois Court of Appeals decision in *Kinkle.* In *Kinkle,* the court reviewed case law from around the country and noted a pattern in cases with arbitration agreements limiting class action suits. 857 N.E.2d at 274. The *Kinkle* court held that "a class action waiver will not be found unconscionable if the plaintiff had a meaningful opportunity to reject the contract term or if the agreement containing the waiver is not burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim being asserted in a cost-effective manner." *Id*. First, the Court notes again that Plaintiffs made no assertions of procedural unconscionability. Plaintiffs made no challenge to the formation of the Arbitration Provision, nor did they assert that they were not given a meaningful opportunity to reject the class action limitation. The Court also finds that the Arbitration Provision does not have other factors that burden Plaintiffs ability to obtain a remedy for the claims they are asserting. The Plaintiffs have the option of arbitrating their claims individually. Additionally, the court finds that arbitration would not be a financial burden on

9

Plaintiffs because the Arbitration Provision provides for Defendants to pay for any arbitration fee up front. Plaintiffs are only responsible for refunding Defendants if Plaintiffs are unsuccessful in arbitration. In light of this language in the Arbitration Provision, filing the present case before the Court was less cost effective for Plaintiffs than initiating arbitration proceedings.

In considering the totality of the circumstances, as required by the Arkansas Supreme Court in *State ex rel. Bryant,* 985 S.W.2d at 302, and the persuasive authority offered by the parties, the Court cannot find that the class action prohibition standing alone renders the Arbitration Provision unconscionable. Plaintiffs made no assertion that they were unaware of the Arbitration Provision and its class action limitations or that Defendants misrepresented or concealed any of the terms in the Arbitration Provisions. Furthermore, Plaintiffs did not convince the Court that the Arbitration Provision prevents them from seeking adequate redress in a cost-effective manner.

Plaintiffs' second basis for their unconscionability argument is their assertion that the Arbitration Provision restricts only their rights, but not Defendants' rights to the judicial system. Plaintiffs cite to the Court many cases in which an arbitration clause restricting only one party's right to the judicial system was held unconscionable.[6] Again the Court notes that Plaintiffs have not offered facts demonstrating any procedural unconscionability. Even if only the Plaintiffs' access to the judicial arena

---

[6] *See Ingle,* 328 F.3d at 1173 (arbitration agreement that required employees to submit employment related claims to arbitration but did not require employer to do the same was unconscionable); *Arnold,* 511 S.E.2d at 862 (holding an arbitration agreement that waived borrower's access to the courts but preserved lenders rights to seek judicial review is unconscionable); *Iwen,* 977 P.2d 989 (Mont. 1999) (holding an arbitration agreement that required consumers to arbitrate all claims but allowed publisher to collect in court is unconscionable); and *Brown v. Tennessee Title Loans Inc.,* 216 S.W.3d 780 (Tenn.Ct.App. 2006) (holding that one-sided arbitration agreement that allowed loan company access to judicial arena but required borrowers to seek redress solely through arbitration is unconscionable).

was restricted, the Court cannot find the Arbitration Provision unconscionable without evidence showing there was some degree of procedural unconscionability as well. As stated above, the Court must consider the totality of the circumstances as required by Arkansas law and both procedural and substantive unconscionability must be proven before the Court will render the Arbitration Provision unconscionable.[7] Even considering both the class action limitation and the denial of Plaintiffs rights to the judicial arena, Plaintiffs have simply not offered the Court enough evidence to establish that the Arbitration Provision is unconscionable. Therefore, the Court finds the Arbitration Provision valid and enforceable.

II. The Scope of the Arbitration Provision

The Court must now address whether Plaintiffs' claims fall within the scope of the Arbitration Provision. Plaintiffs claim that the amount of interest Defendants charged is usurious under the Arkansas Constitution, that Defendants' conduct regarding the payday loans issued to Plaintiffs violates the Deceptive Trade Practices Act, and that Defendants engaged in a civil conspiracy by combining the aforementioned fees in order to exact usurious interest from Plaintiffs. Because there is a strong federal policy favoring arbitration, any doubts concerning the scope of an arbitration provision should be resolved in favor of arbitration. *CD Partners, LLC v. Grizzle,* 424 F.3d 795, 800 (8th Cir. 2005). Additionally, broad worded arbitration provisions are usually construed to include tort claims arising from the "same set of operative facts covered by a contract between the parties to the agreement." *Id.*

Here the Arbitration Provision defines dispute to have the broadest meaning and includes "all

---

[7] *Pleasants,* 541 F.3d at 857 (applying Missouri law); *see also Tillman,* 655 S.E.2d at 370; *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (applying California law); and *Kinkle v. Cingular Wireless, LLC,* 857 N.E.2d 250, 254 (Ill. 2006).

claims, disputes, or controversies arising from or relating directly or indirectly to [the Promissory Note]....” The Court finds that all three of Plaintiffs claims relate directly or indirectly to the loan transactions and the Promissory Note. First, the Plaintiffs’ assert in their usury claim that the Promissory Note was drafted to intentionally conceal the actual interest charged. Second, the Plaintiffs’ deceptive trade practice claim also deals with the interest or fees Defendants charged Plaintiffs, which were agreed upon in the Promissory Note. Third, the Plaintiffs’ civil conspiracy claim arises from the same set of operative facts, the payday loan transactions, as covered by the Promissory Note and thus, is within the scope of the Arbitration Provision. *Id.* Moreover, Plaintiffs do not contest that their claims fall within the scope of the Arbitration Provision. Therefore, the Court finds that all three of Plaintiffs claims are within the scope of the Arbitration Provision.

III. VS of Arkansas’s Motion to Compel Arbitration

Lastly, Defendant VS of Arkansas asserts that it may compel Plaintiffs claims against it to arbitration under the terms of the Arbitration Provision even though VS of Arkansas was not a party to the Arbitration Provision. VS of Arkansas supports this argument with the Arbitration Provision language that extends the agreement to “third parties that have or may have had a relationship with [the customer] relating to any promissory note that [the customer] may enter into with [VS Financial]....” VS of Arkansas also argues that this language is consistent with federal precedent.[8] Plaintiffs do not contest this contention made in VS of Arkansas’s Motion to Compel Arbitration. Therefore, the Court finds that VS of Arkansas, pursuant to the language of the Arbitration Provision, may compel Plaintiffs to

---

[8] *See JLM Industries Inc. v. Stolt-Nielsen, SA,* 387 F.3d 163, 177-78 (2d Cir. 2004); *Grigson v. Creative Artists Agency, LLC,* 210 F.3d 524, 527 (5th Cir. 2000).

arbitration.[9]

<u>CONCLUSION</u>

The Court finds that there is a strong federal policy favoring arbitration, the Arbitration Provision is valid and enforceable, and all of Plaintiffs claims fall within the scope of the Arbitration Provision. For these reasons, the Renewed Motion to Compel Arbitration or, in the Alternative, to Dismiss the First Amended Complaint filed by Defendants Compucredit Corporation and VS Financial, LLC (Doc. 16) is **GRANTED**, and the Motion to Dismiss or Stay this Case and Compel Arbitration, or in the Alternative, to Dismiss for Failure to State a Claim filed by Defendant VS of Arkansas, LLC. (Doc. 19) is **GRANTED**. Pursuant to 9 U.S.C. section 4, the Court directs the parties to submit this case to arbitration in accordance with the Arbitration Provision. This case is stayed pending arbitration pursuant to 9 U.S.C. § 3.

IT IS SO ORDERED, this 27th day of February.

      /s/ Harry F. Barnes     
Hon. Harry F. Barnes
United States District Judge

---

[9] Because the Court is granting Defendants' Motion to Compel Arbitration there is no need to address the alternative Motion to Dismiss at this time.

13